**UNITED STATES of America**

**v.**

**Morris FULLER.**

**Cr. No. 550-67.**

United States District Court
District of Columbia.

Dec. 4, 1967.

Nicholas Nunzio, Asst. U. S. Atty., Washington, D. C., for the United States.

Jean Dwyer, Washington, D. C., for defendant.

## MEMORANDUM OPINION

GASCH, District Judge.

On February 12, 1967, defendant was arrested for operating a motor vehicle without running lights and without a valid driver's license. It became apparent at the precinct station house that defendant was unable to produce collateral and that his incarceration would be required. A routine pat-down search was made, and he was placed in the cell block. Pursuant to police regulations,[1] the arresting officer proceeded directly to the parking lot to secure the vehicle, a procedure requiring the removal of all valuables for safekeeping, rolling up the windows, and locking the car. He noticed an eyeglass case partially protruding from beneath the front seat of the vehicle, and discovered within it 10 vials of a drug called Methergine and a bottle containing 45 tablets of a drug called Desoxyn. Fearing that the defendant might be in possession of dangerous drugs, he returned to the precinct and searched the defendant thoroughly, discovering three more vials of Methergine, two needles, one silver spoon, and 60 gelatin capsules containing what has been proven to be heroin.

Defendant was brought to trial on the traffic violations and on a charge of violation of the Dangerous Drug Act. D. C. Court of General Sessions, Criminal Action Nos. TR 4983–67, TR 4984–67, US 1419–67. The drug violation in US 1419–67 was concerned solely with the Methergine and Desoxyn. During this trial, Judge Andrew J. Howard, Jr., declined to receive in evidence the drugs found in the eyeglass case, feeling that the impounding of the eyeglass case occurred in the process of an illegal search of the vehicle. As a result, defendant was found not guilty in US 1419–67.

The matter presently before this Court is a two-count indictment charging violation of 26 U.S.C. § 4704(a) and 21 U.S.C. § 174. These charges concern

1. The applicable regulations are set forth in Harris v. United States, 125 U.S.App. D.C. 231, 370 F.2d 477 (1966), cert. granted 386 U.S. 1003, 87 S.Ct. 1353, 18 L.Ed.2d 432 (1967).

the 60 capsules of heroin found tucked in the shirt of the defendant.

Defendant has moved for the suppression of these 60 capsules, admitting that the initial arrest and preliminary search of the defendant were proper, but claiming that the procedure followed in securing the vehicle constituted an unlawful search within the meaning of the Fourth Amendment to the Constitution of the United States. Defendant argues that it was the discovery of the drugs in the eyeglass case during this search that led to the more thorough examination of his person, and that, therefore, the heroin found during this examination should be suppressed as "fruit of the poisonous tree," citing Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920), and its progeny.

These issues are thus presented to the Court. First, whether the Court is conclusively bound by the finding in the Court of General Sessions that the securing procedure employed in this case constituted an unlawful search. Second, if the Court is not so bound, whether this procedure was indeed an unlawful search. Third, assuming that the procedure was unlawful, whether the heroin seized during the subsequent examination of the defendant must be suppressed as "fruit of the poisonous tree."

 The Court is of the opinion that it is not conclusively bound by the law of this case as interpreted by Judge Howard in the Court of General Sessions. "The term 'law of the case' 'merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power.'" Naples v. United States, 123 U.S.App. D.C. 292, 359 F.2d 276 (1966), fn. 1, citing Messenger v. Anderson, 225 U.S. 436, 32 S.Ct. 739, 56 L.Ed. 1152 (1912). In Van Voorhis v. District of Columbia, 240 F.Supp. 822, 824 (D.C.D.C.1965), Judge Tamm considered it "clear that the [Messenger] rule is equally applicable to the reconsideration of an order of one District Judge by another District Judge in the same case." Defendant has argued,

however, that this case more nearly approaches the *res judicata* situation in Sealfon v. United States, 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180 (1948). In that case, the petitioner was tried and acquitted of a charge of conspiracy to defraud the United States. Thereafter, he was tried and convicted of the substantive offense. The Supreme Court held that, on the particular facts there involved, the jury's finding in the conspiracy case precluded any subsequent trial on the substantive offense under the doctrine of *res judicata*. What was considered conclusive in *Sealfon*, however, were those matters of fact determined by the jury's verdict in the conspiracy case, and not a ruling on a matter of law. "Thus the only question in this case is whether the jury's verdict in the conspiracy trial was a determination favorable to petitioner of the facts essential to conviction of the substantive offense." Sealfon, 332 U.S. at 578–579, 68 S.Ct. at 239.

 Turning then to the second of the issues enumerated above, the Court feels that the procedure followed by the officer in securing the vehicle that had been entrusted to the defendant by its owner did not constitute an unreasonable search and seizure proscribed by the Fourth Amendment. The vehicle had been impounded, and it was impossible at the time to be sure of how long it would remain in the custody of the Metropolitan Police. Certainly, the Police had a duty to protect the interior of the car from the elements by making sure that the windows were rolled up. The practice of protecting whatever valuables may be found in an automobile by keeping them in an envelope inside the precinct is not only not unreasonable, but is also in the public interest where it is not utilized as a substitute for a search without a warrant. It is not unusual for items to disappear from parked vehicles in this jurisdiction, in spite of well lit parking lots and locked doors. In Harris v. United States, supra, fn. 1, incriminating evidence was discovered by an officer as he opened a door to roll up a win-

dow in the process of securing an impounded vehicle. Here, as there, the item was not found in the glove compartment, or trunk of the vehicle. Here, as there, the item seized was in open view, and proved upon closer examination to be of a suspicious nature. Here, as there, there is no indication that a search for evidence of crime was being made. The Fourth Amendment does not proscribe *all* searches, but only those which are unreasonable. Where a search is conducted as a service to an individual, as in Vauss v. United States, 125 U.S.App. D.C. 228, 370 F.2d 250 (1966), evidence of crime accidentally discovered need not be suppressed. The protection of a man's property is no less a service than that which was being rendered in *Vauss*.

█ Once the drugs in the eyeglass case were discovered, the officer concededly had probable cause to examine the defendant more closely. Seizure of the heroin, regardless of whether it occurred a few moments before, or a few moments after the defendant was officially arrested for possession of the narcotics involved in this case, was, in the present context, incident to a lawful arrest.

██ In view of the above conclusions, it is not necessary for the Court to consider the third issue enumerated above. However, the Court has considered this issue thoroughly, and wishes to state its findings as a separate and independent ground for the admission into evidence of the heroin seized. Even assuming that the drugs in the eyeglass case were unlawfully observed, the Court is of the opinion that the heroin subsequently discovered on the person of the defendant need not be suppressed as "fruit of the poisonous tree." The right and duty of the arresting officer to search incident to a lawful arrest is not exhausted by a preliminary superficial pat down. Nor is it significant that the search extends beyond the scope of the original arrest.[2] The position of the defendant seems to be that once he has been

searched, no matter how superficially, and placed in custody, the Fourth Amendment guarantee against unreasonable searches and seizures prevents any subsequent examination. In attempting to make use of the poisonous fruit doctrine, defendant ignores the duty of those responsible for the custody of many dangerous persons to prevent their acquisition of contraband. Where a person is lawfully arrested, his person and all items concealed thereon enter into the custody of the law.

In Charles v. United States, 278 F.2d 386 (1960), the 9th Circuit was presented with the question of the admissibility of marihuana seized as a result of the second search of an individual already under arrest. In holding such evidence admissible, the Court stated:

> Our problem here is whether or not the second search of appellant's person was similarly invalidated because the police were seeking to obtain evidence of a crime uncharged. Assuredly, a second search of appellant's person for concealed weapons, improving upon the earlier, desultory "frisking" would not abrogate constitutional strictures.
>
> \* \* \* \* \* \*
>
> Once the body of the accused is validly subjected to the physical dominion of the law, inspections of his person, regardless of purpose, cannot be deemed unlawful, see People v. Chiagles, 1928, 237 N.Y. 193, 142 N.E. 583, 32 A.L.R. 676, unless they violate the dictates of reason either because of their number or their manner of perpetration. Hence, we think that the second search of appellant's person was permissible under the Fourth Amendment, and the packet of marijuana thereby obtained was properly admitted into evidence. Charles v. United States, supra, at 388–389.

Should an arrested individual succeed in smuggling contraband, particularly dangerous narcotic drugs, into an area where such contraband can do the most harm, he should not be heard to com-

---

2. Harris v. United States, 331 U.S. 145, 154, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947).

plain that the contraband was discovered by a second more thorough search rather than by the first desultory frisking. To characterize a second search of one lawfully in custody as "fruit of the poisonous tree," at least in these circumstances, would be to establish a dangerous and logically untenable precedent.

The Court therefore admits the heroin into evidence and proceeds to a consideration of the merits of the case. Upon consideration of the evidence introduced, and the testimony in support thereof, the Court hereby finds the defendant, Morris Fuller, guilty as to both counts of the indictment.