Mitchell D. Schweitzer, J.
Defendant, Daniel J. Sullivan, has been indicted for the unlawful possession of a loaded pistol. Defendant moves to suppress the introduction of the pistol into evidence and for the dismissal of the indictment which was *209 obtained on the basis of the introduction of the pistol into evidence before the Grand Jury, contending that the pistol is the fruit of an unconstitutional search and seizure.
The State claims that the pistol was discovered as a result of a “ custodial measure to protect the owner’s property and to protect the impounding agency from false claims.” For this reason, the State argues, an otherwise impermissible search and seizure may be sustained.
The essential facts are not in dispute. On October 22, 1967, defendant rented a 1968 Chevrolet automobile from a rental agency located in New York City. Sometime during the night of October 23, or during the early morning hours of October 24, 1967, defendant lawfully parked this vehicle on West 45th Street, between 8th and 9th Avenues. Between 8:15 a.m. and 8:30 a.m., on the morning of October 24, defendant’s vehicle was ticketed for being illegally parked (parking was forbidden between 8:00 a.m. and 9 :00 a.m. in a Tow-Away Zone).
Very shortly thereafter, a Police Department tow truck arrived; a police officer entered the locked car with a tool, released the brake, and towed the vehicle to a storage facility. The automobile storage facility involved here is a large closed area, maintained by the police, located at 56th Street and the Hudson Biver. Access to the facility, and all vehicular traffic in and out, is monitored by uniformed patrolmen.
After parking the automobile at the storage facility, the officer began to “inventory” the contents of the car. It is undisputed that in the process of making this ‘‘ inventory ’ ’, the officer found a closed black plastic briefcase located on the floor of the car and, upon opening the briefcase, he found a loaded pistol which is the subject of the indictment and the motion now before this court. The defendant’s main contention is that the seizure of the pistol from the closed briefcase in his vehicle was the direct by-product of an illegal search.
The Fourth Amendment of the United States Constitution provides: “ The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.”
It is well settled that a search of an automobile must meet the test of reasonableness under the Fourth Amendment before evidence obtained as a result of such a search is admissible. (See, e.g., Preston v. United States, 376 U. S. 364, 366 [1964] ; Brinegar v. United States, 338 U. S. 160 [1949]; Carroll v. *210 United States, 267 U. S. 132 [1925].) “ The fact that exceptions to the requirement that searches and seizures be undertaken only after obtaining a warrant are limited ’ ’ has clearly and repeatedly been articulated by the Supreme 'Court. (United States v. Ventresca, 380 U. S. 102, 106-107 [1965].) Those exceptions recognized in Ventresca are limited to situations Avhere procuring a warrant is ‘ ‘ impracticable ’ ’ or where the search is incident to a lawful arrest. A further exception to the requirement for the procurement of a warrant exists where an unequivocal consent has first been freely given to the search (Amos v. United States, 255 U. S. 313; and, see, People v. Gonzalez, 50 Misc 2d 508).
Here, no serious argument is made that defendant’s pistol Avas obtained as a result of any of these recognized exceptions to the requirement that searches and seizures may be undertaken only after a search warrant has been obtained. Since the car had already been seized, procuring a warrant (had probable cause existed) would surely have been practical. Manifestly, no consent was given to the search, and it is likewise clear that this search was not incidental to a lawful arrest. (See United States v. Ventresca, supra, p. 107, n.2 [1965].) Even if defendant had been in his car when the traffic infraction occurred, no search of the car incidental to an arrest could properly have been made. Recently, in People v. Marsh (20 N Y 2d 98, 100-101 [1967]), the Court of Appeals specifically forbade searches made in connection with traffic violations even though the search in question was actually pursuant to an - arrest r “'"There is no question, and the entire court agrees, that a police officer is not authorized to conduct a search every time he stops a motorist for speeding or some other ordinary traffic infraction * * *
‘ ‘ Although, as a general rule, when an individual is lawfully arrested, the police officer may conduct a contemporaneous search of his person ‘ for weapons or for the fruits of or implements used to commit the crime ’ (Preston v. United States, 376 U. S. 364, 367), we do not believe that the Legislature intended the rule to cover arrests for traffic violations.” (Emphasis supplied.)
(See People v. James, 46 Misc 2d 138 [Sup. Ct., 1965]; People v. Jordan, 37 Misc 2d 33 [Orleans County Ct., 1962].)
The District Attorney takes the only position available to him on the present facts and claims that the pervasive examination of the contents of defendant’s automobile was not a “ search ” but, rather, an “ inventory.” It is argued that the police are empowered by departmental regulation to check the *211 contents of a vehicle towed away for a traffic infraction in order to make a record of valuables contained therein, with a view to their proper preservation (Temporary Operating Procedure 20, N. Y. City Police Dept., Jan. 18,1967).
The issue posed for this court is whether the police may lawfully carry out a warrantless intrusion into an automobile and into a closed briefcase contained therein — by reason, of the impounding of such an automobile for a minor parking infraction. In the court’s considered view, such a practice constitutes a grievous breach of those protections guaranteed by the Fourth Amendment.
Judicial approval, if given to such a search, would justify a comprehensive intrusion into every area of an individual’s car including packages, briefcases, suitcases and perhaps trunks found in an impounded car. Such a concept of law would create a new and vast exception to the explicit strictures of the Fourth Amendment not justified in either law or morals.
The District Attorney has presented no justification for the warrantless search made herein. Labelling the procedure used a “custodial measure to protect the owner’s property and to protect the impounding agency from false claims ” is not enough. The police took defendant’s car from the streets to a secure storage facility — which, if necessary, could have been made even more secure. The police could easily have locked the doors and windows of the car. It is difficult to conceive of any reason for opening a closed briefcase. There is more than enough protection in the civil law as it presently exists for the police (and for innkeepers, hotel operators, garage-men and others similarly situated who have no “inventory” privileges) against those who would assert false claims. An “ inventory ” procedure may too easily be used as a subterfuge for an exploratory search. Here, the potential for abuse is great. No countervailing consideration has been presented which could legally justify and validate such a search.
Recently, in Dodge v. Turner (274 F. Supp. 285 [U. S. Dist. Ct. Utah, 1967]), the District Court dismissed as “ specious ” a claim that the search of an empty vehicle, pursuant to a “regular procedure on impound, to determine if there is anything of value in the car,” could be excused because it constituted an “inventory.” The court held (p. 291): “The claim that the officer had to search the car before impounding it because if he had not he could be held civilly liable for conversion of article which might be claimed to have been in the car and later not found, is specious. Rather than raise such question by an irregular search in private, the officer’s *212 protection could much better have been secured through reliance upon a search warrant in the regular way. The cireumstaces of his private search were designed to invite the very questions mentioned and others.”
In Preston v. United States (376 U. S. 364 [1964]), the defendants were arrested for vagrancy after they failed to give an acceptable explanation of their presence in a parked car late at night. The defendants were taken to the police station, and their car was taken first to the station and then to a police garage. After the men were booked,. police officers went to the garage, searched the car without warrant, and found evidence incriminating the defendants in a conspiracy to rob a bank. The Supreme Court held the search unconstitutional.
The United States Supreme Court cases on which the State relies are inapposite here. Harris v. United States (390 U. S. 234), on which the State principally relies, is simply not in point. In Harris, an officer was in the process of rolling up the windows and closing the doors on an impounded car, in order to secure the car and protect it against rain, when he saw incriminating evidence which “lay face up on the metal stripping over which the door closes.” (pp. 235-236). The policeman was merely taking a rudimentary measure to protect the car from the elements. The court held (p. 236): “It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence. Ker v. California, 374 U. S. 23, 42-43 (1963); United States v. Lee, 274 U. S. 559 (1927); Hester v. United States, 265 U. S. 57 (1924).”
Manifestly, the “ open view ” doctrine does not apply to our facts here. Indeed, the court in Harris expressly stated that (p. 236): “ The admissibility of evidence found as a result of a search under the police regulation [i.e., the regulation of the Washington, D. 0. Metropolitan Police Department required that impounded vehicles be inventoried] is not presented by this case.”
Mr. Justice Douglas specifically premised his concurrence in Harris on the fact that (p. 237): “ (1) the car was lawfully in police custody, and the police were responsible for protecting the car; (2) while engaged in the performance of their duty to protect the car, and not engaged in cm inventory or other search of the car, they came across incriminating evidence. ’ ’ (Emphasis supplied.)
Similarly, Cooper v. California (386 U. S. 58 [1967]) does not support the State here. In that case, the vehicle in question *213 had been, seized as “evidence” in a criminal case and was required to be held under California law for forfeiture, having served as a conveyance for the illegal transportation of drugs. The automobile in Cooper had been seized, held, and later searched — all in connection with a related narcotics arrest. This factor loomed large to the Cooper majority; it was on this basis that the court distinguished the case from Preston v. United States (supra) in which the delayed search of a vehicle was unrelated to the vagrancy charge upon which Preston had been arrested. The court emphasized that (p. 61):
(i) “Here the officers seized petitioner’s car because they were required to do so by state law.” The car “was impounded by the officers and their duty required that it be kept ‘ as evidence ’ until forfeiture proceedings were carried to a conclusion.” (p. 60):
(ii) “Their subsequent search of the car — whether the State had ‘ legal title ’ to it or not — was closely related to the reason petitioner was arrested, the reason his car had been impounded, and the reason it was being retained.” (p. 61).
(iii) “ The forfeiture of petitioner’s car did not take place until over four months after it was lawfully seized. It would be unreasonable to hold that the police, having to retain the car in their custody for such a length of time, had no right, even for their own protection, to search it.” (pp. 61-62; emphasis supplied).
Obviously, none of the key factors on which the court relied in Cooper are involved here; in this case, within a matter of hours after the defendant’s car was impounded for a minor parking infraction, incriminating evidence was obtained from a closed briefcase within the car.
Indeed, in the dissenting opinion of Justice Douglas in Cooper, he focused briefly on “ inventory ” searches (an issue not before the court), admonishing that (p. 65): “ These days police often take possession of cars, towing them away when improperly parked. These cars are ‘ validly ’ held by the police. Yet if they can be searched without a warrant, the precincts of the Individual are invaded and the barriers to privacy breached. Unless the search is incident to an arrest, I would insist that the police obtain a warrant to search a man’s car just as they must do when they search his home.” (Three other Justices joined with Douglas, J., as dissenters in Cooper.)
This thesis has likewise been advanced by the Supreme Court of Washington in the case of State v. Montague (438 P. 2d 571, 574 [Wash., 1968]) in which it was held, albeit dictum, “ What *214 is now frequently referred to as the inventory rule will not apply, however, and evidence of crime discovered during the taking of the inventory will be suppressed as evidence, unless there first be a lawful arrest. Miller v. State, 137 So. 2d 21 (Fla. App. 1962).”
While not exactly apposite but nevertheless significant as bearing on the issue presented in the instant case is the recent ruling of the Supreme Court in Camara v. Municipal Ct. (387 U. S. 523 [1967]). In this case the Supreme Court had under review a provision of the San Francisco Housing Code which permitted authorized employees of designated city agencies to enter upon fixed premises for inspection purposes as a matter of right and without a search warrant. Such a warrantless administrative search was struck down as violative of the Fourth Amendment. The court stated (pp. 530-531): “It is surely anomalous to say that the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior. For instance, even the most law-abiding citizen has a very tangible interest in limiting the circumstances under which the sanctity of his home may be broken by official authority, for the possibility of criminal entry under the guise of official sanction is a serious threat to personal and family security. ’ ’
While not suggesting that the right to the privacy of one’s automobile may be equated with the sanctity of one’s home, nevertheless it would appear that any administrative ordinance or regulation providing for a warrantless search, whether it relates to a search of one’s automobile or one’s home, must be deemed invalid as violative of such owner’s Fourth Amendment rights.
FINDINGS
Predicated on all of the foregoing, this court makes the following findings of fact and law:
1. That the defendant’s rented automobile was impounded by the police because it was parked illegally in a “ tow-away zone.”
2. That the police conducted a search of the car pursuant to a police enacted inventory regulation, seizing a pistol which was discovered in a closed briefcase on the floor of the car.
3. That the police compound within which the car was searched was in an enclosed area under police protection and custody and ingress by a private person could only be obtained by showing proof that his car had been impounded. By virtue of this police protection, nothing within the car was subject to *215 vandalism so as to bring it within the rule of People v. Manzi (21 A D 2d 57 [1st Dept., 1964]).
4. That the search of the automobile was concededly warrant-less, without consent and not incidental to, or connected with, any arrest of any person; nor was the car the subject of any suspicion that it was the instrumentality of any crime.
5. That the Police Department may not, under the guise of an enactment of an inventory regulation, legalize what would otherwise be a constitutionally impermissible search, no matter how reasonable such regulation may be.
On the basis of all of the foregoing, I find the so-called ‘ ‘ inventory ’ ’ search carried out here to have been violative of defendant’s Fourth Amendment rights, and the motion to suppress is granted. The effect of this ruling is to make it impossible for the corpus of the crime charged to be established and, in this situation, the indictment is dismissed. By reason of this disposition, there is no reason to pass upon the other relief sought by the defendant.