J. Irwin Shapiro, J.
In a hearing on a motion by defendant to suppress as evidence a quantity of heroin and a counterfeit United States $20 bill, I find the following facts to have been established:
On September 16, 1969, at about 3:15 a.m., Patrolman Bauer and a fellow officer, in a patrol car, pursued and stopped defendant, who was driving a 1969 blue Chrysler Imperial on Grand Central Parkway at 65 miles per hour in a 50-mile zone. Defendant and Bauer got out of their respective cars and Bauer informed defendant that he had been speeding and requested his operator’s license and registration. Defendant produced a New York State chauffeur’s license issued to Ellington F. Taylor.
*474 After some conversation, Bauer again requested that defendant give him the certificate of registration, and defendant motioned to Bauer to follow him to the rear of the Chrysler, where defendant opened the trunk. At that time, Bauer noticed that the chauffeur’s license defendant had given him did not have attached a photograph (as required by Vehicle and Traffic Law, § 501, subd. 1, par. c) and he asked defendant what his name was. Defendant replied that his ndme was Taylor, but he was unable to give his first name. Bauer then questioned defendant as to his address and the other information contained on the license, but defendant was unable to answer any of the questions. Asked by Bauer to sign his name on a piece of paper, defendant wrote the signature “ Robert Taylor” in a handwriting different from that on the chauffeur’s license.
Bauer then again asked the defendant for the certificate of registration, and defendant reached under some clothing in the trunk of the car and produced some papers which he laid on the shelf of the trunk. Among those papers was a New York State certificate dated May 1969 for the sale of a 1969 Chrysler Imperial to an Edward Godfrey. Defendant, asked who Godfrey was, stated that he was his cousin. Bauer again asked defendant for the registration, and defendant told him to look through the papers in the trunk. As Bauer was examining the papers, defendant moved towards the front of the car. Finding no registration among the papers, Bauer followed defendant and found that defendant had entered the car. As Bauer came to the door on the driver’s side, which was open, defendant, who had his hand across the car to the right side where the glove compartment was open and his left hand hanging below the seat directly underneath the wheel, u abruptly pulled back his hand from the right and from below the seat * * * grabbing some papers that were on his lap and stepping out of the car. ’ ’
Defendant pushed a piece of paper into Bauer’s hand and moved quickly past him. Bauer peered into the car to see what it was that defendant had moved away from so abruptly and he observed a brown paper bag lying on the floor partially under the driver’s seat. The piece of paper that defendant had put into Bauer’s hand was a New Jersey certificate of registration for the license plates which were on the 1969 blue Imperial. The registration, however, was issued to a Tony Smith for a 1966 bronze Plymouth. Bauer then went ‘ ‘ after ’ ’ the defendant, who by this time was with the other officer. Bauer told his brother officer to watch defendant and he went to his radio car and called over the air for a check on the license plates. In a *475 few seconds the report came back that there was no record on those license plates.
Bauer then had a conversation with his brother officer in which he detailed all the ££ discrepancies ” that he had come upon, and his brother officer then went to defendant’s car and got the brown paper bag which was in open view. No general search was made of the Chrysler. The only search made was in opening the brown paper bag, in which were found 705 glassine envelopes containing heroin, and the only articles taken from defendant were this brown paper bag and the license. Thereupon defendant was taken to the police station. There, according to the sworn complaint in the Criminal Court, defendant was searched and a counterfeit United States $20 bill was found in his wallet.
As a result of the foregoing, the indictment in this case was returned charging defendant with the commission of five crimes. They are (1) criminal possession of a dangerous drug in the third degree, (2) criminal possession of a forged instrument in the first degree — a counterfeit United States $20 bill, (3) using an operator’s license belonging to another person or the use of a forged or fictitious operator’s license, in violation of section 501 (subd. 3) of the Vehicle and Traffic Law, (4) operating a motor vehicle without being licensed to do so, in violation of section 501 (subd. 4, par. a) of the Vehicle and Traffic Law, and (5) operating and driving an unregistered motor vehicle in violation of section 401 (subd. 1, par. a) of the Vehicle and Traffic Law.
I
This case presents for determination a question of first impression: If there is probable cause to believe that a person driving an automobile committed or was simultaneously committing a felony, traffic misdemeanors and traffic infractions, and he is taken into custody by an officer without articulation of the fact that he was being arrested and without specification of the ground of the arrest, is a subsequent search of the automobile warranted solely on probable cause to believe, on the facts, that the felony had been or was being committed?
The Fourth Amendment of the United States Constitution does not forbid all searches and seizures; it forbids only unreasonable searches and seizures. (Elkins v. United States, 364 U. S. 206, 222.) A search and seizure is unreasonable and invalid unless made pursuant to a warrant issued upon a showing of probable cause to believe that a crime has been or is being committed or unless it is incident to, and contemporaneous with, a *476 lawful arrest. (Ker v. California, 374 U. S. 23, 34-35; Agnello v. United States, 269 U. S. 20, 30; cf. Camera v. Municipal Ct., 387 U. S. 523, 534; Preston v. United States; 376 U. S. 364, 367.) A lawful arrest, like a warrant, must also be based upon probable cause to believe that a crime has been or is being committed. (Draper v. United States, 358 U. S. 307, 313; Brinegar v. United States, 338 U. S. 160, 175; People v. Brady, 16 N Y 2d 186,189; People v. Coffey, 12 N Y 2d 443, 451, cert. den. 376 U. S. 916.)
What constitutes probable cause 11 is not a matter for technical rules or tight and exact definition ’ ’ (People v. Marshall, 13 N Y 2d 28, 34; also, see, People v. Coffey, supra, at p. 451). Probable cause requires no more than “ 1 a reasonable ground for belief in guilt ’ ” (Carroll v. United States, 267 U. S. 132, 161). “ In dealing with probable cause * * * as the very name implies, we deal with probabilities. These are not technical ; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act ” (Brinegar v. United States, supra, at p. 175; also see, Husty v. United States, 282 U. S. 694, 700-701; Carroll v. United States, supra, at p. 162). Therefore, it is not required that evidence to sustain an arrest without a warrant should “ suffice to convict ” (Wong Sun v. United States, 371 U. S. 471, 479; also see United States v. Ventresca, 380 U. S. 102, 107), nor even to make a prima facie showing of criminal activity (Spinelli v. United States, 393 U. S. 410, 419). Even if a police officer does not know at the time of arrest of any specific crime which the defendant had committed or was committing, probable cause can nevertheless exist, and a determination that the arrest and search and seizure were lawful is not precluded. (People v. Merola, 30 A D 2d 963; People v. Messina, 21 A D 2d 821; People v. Cassone, 20 A D 2d 118, affd. 14 N Y 2d 798, cert. den. 379 U. S. 892.)
A reasonable ground for belief that a crime has been or is being committed to constitute probable cause does not rest upon the subjective reaction of the police officer making the arrest. It depends, rather, upon an objective appraisal of the facts and circumstances to determine the existence or nonexistence of probable cause. (Terry v. Ohio, 392 U. S. 1, 21-22.) The oft-given test for probable cause to support a lawful arrest is whether an officer in good faith believes that a person is guilty of an offense and his belief rests on such grounds as would induce an ordinarily prudent and cautious man, under the circumstances, to believe likewise. (Beck v. Ohio, 379 U. S. 89, 91; Ker v. California, 374 U. S. 23, supra, at pp. 34-35; Husty *477 v. United States, 282 U. S. 694, supra, at pp. 700-701; People v. Coffey, 12 N Y 2d 443, supra, at p. 451.)
Predicated upon the foregoing principles of law, there was ample probable cause in the circumstances here for Officer Bauer to have believed in good faith that defendant was driving a stolen automobile and to have arrested him upon that ground. Bauer, however, in answer to the court’s question, testified that he did not arrest defendant for possessing a stolen car when his partner seized the brown paper bag. In fact, there was not testimony by Bauer or any other police officer that an articulated arrest was made upon any specific ground — although a number of valid grounds for arrest existed at the time. Nevertheless, it is clear that defendant was then under arrest. Apart from the fact that from the time he was stopped and he was unable to produce a proper registration certificate he was not free to leave (see, e.g., Brown v. United States, 365 F. 2d 976, 979), the further fact that prior to the seizure of the brown paper bag Officer Bauer instructed his brother officer to watch defendant when he called over the air for a check of the license plates establishes that defendant’s liberty of movement was restricted and that he was therefore under arrest (Henry v. United States, 361 U. S. 98, 103). Even though a police officer does not state that a person is under arrest, the term “ arrest ” may be applied where a person is restrained in his full liberty and such detention is continued for even a short period of time. (Morton v. United States, 147 F. 2d 28, 30, cert. den. 324 U. S. 875.)
In this situation, the question is presented whether the felony of possessing a stolen automobile, for which there was probable cause, can serve as the basis for the “arrest” even though Officer Bauer did not so specify to justify an incidental and contemporaneous search and seizure. The answer to this question, it seems to me, should be in the affirmative. The validity of an arrest, where the substantive requirements to support it are present, cannot be made to rest upon the recognition by the police officer of these requirements and an articulation and specification by him of the basis for the arrest, particularly where there also are present other valid grounds for a lawful arrest. Arrests should be tested and interpreted in a common-sense and realistic fashion and not by formalistic and ritualistic requirements. (Cf. United States v. Ventresca, 380 U. S. 102, supra, at p. 108.) The test for determining whether a search incidental to an arrest was lawful depends upon an objective appraisal of the facts and circumstances within the knowledge of the arresting officer to determine the existence or nonexistence of probable *478 cause ■ — ■ whether they would “ warrant a man of reasonable caution in the belief ” that the action taken was appropriate. (Cf. Terry v. Ohio, supra, at pp. 21-22.)
Thus, the seizure by the police officer of the brown paper bag was reasonable and justifiable. It was merely incident to, and contemporaneous with, the arrest of defendant upon probable cause that he possessed a stolen automobile. That such charge was not subsequently lodged against defendant, or that it could not successfully be maintained — for many reasons other than lack of criminality, such as the death of owner or inability to locate him — is of no import. The vital factor is that in the circumstances a ‘ ‘ reasonably discreet and prudent man ’ ’ would be justified in believing defendant was operating a stolen automobile.
II
Defendant contends, however, that Officer Bauer had “ no evidence that this defendant had committed a crime other than a traffic violation ’ ’ and that, therefore, under the holdings of People v. Marsh (20 N Y 2d 98) and People v. Granese (32 A D 2d 568) the seizure and search of the brown paper bag was unauthorized and unlawful. Assuming for the purpose of this discussion that defendant’s premise is correct, it does not follow that March and Granese condemn the seizure and search here as constitutionally defective.
In Marsh, the Court of Appeals held that a police officer is not authorized to conduct a search upon making an arrest for an ‘ ‘ ordinary traffic infraction. ’ ’ In reaching this conclusion, the court noted that a “traffic infraction” is not a crime. (See Vehicle and Traffic Law, § 155.) For that reason, Marsh is not applicable here. Although not explicitly stated by Officer Bauer, defendant’s arrest was apparently based in part upon the following violations of the Vehicle and Traffic Law which were eventually charged in the indictment: (1) using an operator’s license belonging to another person or the use of a forged and fictitious operator’s license, in violation of section 501 (subd. 3), (2) operating á motor vehicle without being licensed to do so, in violation of section 501 (subd. 4, par. a), and (3) operating and driving an unregistered vehicle, in violation of section 401 (subd. 1, par. a). Bach of these charges is a misdemeanor. (See Vehicle and Traffic Law, § 501, subd. 10; § 401, subd. 18.) Thus this case is not governed by Marsh.
Granese did not extend the holding in Marsh to arrests for misdemeanors under the Vehicle and Traffic Law. The decision in that case did not, as I read it, turn upon the basis of the arrest *479 as the rationale for the holding that the search of the automobile was unjustified and unlawful.
In Granese, the defendants, who were placed under arrest while riding in an automobile, were taken to the police station, where they were when their car, parked at the curb, was searched five minutes later. From the memorandum decision of the majority of the court and the citation of the cases of Dyke v. Taylor Instrument Co. (391 U. S. 216, 220); Preston v. United States (376 U. S. 364); People v. Marsh (20 N Y 2d 98,102-103), and People v. Sullivan (57 Misc 2d 208, 211) for comparison, it is clear that the rationale for the holding that the search was not reasonable or authorized was predicated upon the fact that the search was not incident to, nor contemporaneous with, the arrest. The cited cases do not hold that a search of an automobile immediately following an arrest for a misdemeanor similar to those in Granese is unreasonable and unauthorized. Dyke v. Taylor Instrument Co. (supra) dealt with a search of a car parked on the street outside a courthouse while the defendants, who had been arrested for reckless driving, were waiting inside the jail, and it was held that such search was too remote in time or place to be an incident of the arrest (pp. 220-221). Preston also condemned a search of an automobile which was ‘ ‘ too remote in time or place to [be] incidental to the arrest” (376 U. S., at p. 368). In that case the automobile, which was left unattended by the police, was searched some time after the police had interviewed the defendant in the police station. Sullivan dealt with the constitutionality of a “ custodial measure [taken by the police] to protect the owner’s property and to protect the impounding agency from false claims ” in a police search of an impounded illegally parked car. And Marsh, significantly not cited outright but merely for comparison, apparently was for the purpose of applying to the charges which constituted traffic infractions, i.e., driving an uninspected vehicle (Vehicle and Traffic Law, § 306, subd. b) and driving a vehicle with improper plates (Vehicle and Traffic Law, § 402, subd. 4).
That the rationale for the holding in Granese that the search was not reasonable or authorized was predicated upon the fact that the search was not incident to, nor contemporaneous with, the arrest, is fortified by the first sentence in the dissenting memorandum of that case. Mr. Justice Munder, in dissenting, said: “I agree that the seizure of the paper bag containing jewelry and foreign currency, which defendant was later charged with having stolen, cannot be sustained on the theory that the search was incidental to a contemporaneous arrest.”
*480 Even if it were assumed that Granese extended Marsh to include some traffic misdemeanors, such extension would not condemn the search here, for such extension would not apply to the misdemeanor of using an operator’s license belonging to another person or the use of a forged or fictitious operator’s license, with which defendant here was charged.
Apart from the traffic infractions, Granese’s arrest was based upon the commission of two traffic misdemeanors, namely; being an unlicensed operator and driving an unregistered vehicle. To equate these misdemeanors to traffic infractions so as to interdict searches of automobiles upon arrests for their violation, the rationale of Marsh would have to apply to those misdemeanors. In Marsh, Chief Judge Fttld said (p. 101): “ Although, as a general rule, when an individual is lawfully arrested, the police officer may conduct a contemporaneous search of his person 1 for weapons or for the fruits of or implements used to commit the crime ’ (Preston v. United States, 376 U. S. 364, 367), we do not believe that the Legislature intended the rule to cover arrests for traffic violations. It is obvious that, except in the most rare of instances, there can be no ‘ fruits ’ or 1 implements ’ of such infractions and the search, to be upheld, would have to be justified as one for weapons.”
That rationale, however, does not apply to the misdemeanor charged against this defendant of using an operator’s license belonging to another person or the use of a forged or fictitious operator’s license in violation of section 501 (subd. 3) of the Vehicle and Traffic Law. Whereas it may be argued that in the case of an arrest for driving without an operator’s license or driving an unregistered vehicle there cannot be, except in rare instances, any ‘ ‘ fruits ” or “ implements ’ ’ of such infractions to justify a search of an automobile upon an arrest, that cannot be said for one arrested for using a forged or fictitious operator’s license. In such case a search of the automobile would be clearly indicated, for the defendant may well be in possession of the instrumentalities for creating such forged or fictitious operator’s license or other forged or fictitious licenses. It follows that the arrest of defendant, at least for this charge of possessing a forged or fictitious license, was a reasonable basis for the seizure of the brown paper bag in the automobile and the search of defendant’s wallet in the police station and the seizure of a counterfeit United States $20 bill therefrom. Motion to suppress is denied.