**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**William Elmer MITCHELL, Defendant-**
**Appellee.**

**No. 71-1868.**

United States Court of Appeals,
Ninth Circuit.

April 11, 1972.

Eugene A. Lalonde, Asst. U. S. Atty.
(argued), Otis L. Packwood, U. S. Atty.,
Billings, Mont., for plaintiff-appellant.

John L. Adams, Jr. (argued), Billings,
Mont., for defendant-appellee.

Before ELY and WRIGHT, Circuit
Judges, and POWELL, District Judge.*

EUGENE A. WRIGHT, Circuit Judge:

Pursuant to 18 U.S.C. § 3731, the
United States appeals from an order
suppressing evidence. At issue is the
admissibility of an automatic pistol
found in Mitchell's automobile. The dis-
trict court suppressed the weapon on the
ground that it was obtained in violation
of the Fourth Amendment. Finding no
unreasonable search or seizure, we re-
verse.

Mitchell was arrested in Billings,
Montana for speeding in the early morn-
ing hours of February 5, 1971. He was
driving an out-of-state car. At the time
he was on parole from a felony convic-
tion, under the supervision of the feder-
al probation office in Santa Ana, Cali-
fornia. Because he was unable to make
bond, he was confined in the city jail to
await appearance in municipal court.

Pursuant to standard police procedure,
a patrolman was instructed by his supe-
rior to take Mitchell's car to the city im-
pounding lot some distance from the po-
lice station. After he had entered the
car and while driving it to the lot, the
officer observed a partially opened sam-
ple case on the floor in front of the pas-
senger side of the front seat. He also
saw several valuable watches in plastic
cases on the front seat, and apparently
on the floor around the sample case as
well. Each watch had a price tag of
$125.00 affixed.

Upon arrival at the lot, the officer
straightened up the sample case and put
the watches in it. In the process of
placing the watches in the case he no-
ticed a weapon inside. He secured the

* Honorable Charles L. Powell, Chief Judge,
United States District Court for the

Eastern District of Washington, sitting
by designation.

car and returned to the police station where the case and its contents were inventoried. There were 29 watches, a blackjack, and an automatic pistol.

Mitchell was subsequently charged with possession of a weapon by a felon, a violation of 18 U.S.C. App. § 1202(a).

The first issue is whether the actions of the patrolman were a search within the ambit of the Fourth Amendment. We note that there was no intent to discover evidence of crime. Rather this was responsible, indeed laudable, police conduct to protect the property of the owner of a lawfully impounded car. If valuable property had been left on the seat and floor of the car, plainly visible to anyone peering through the window, the danger of theft would have been substantial. Not surprisingly, it appears that the locking and securing of impounded cars, and the removal and inventory of valuable property in plain sight, are standard procedures. They certainly should be.

These procedures protect not only the interests of the property owner but also those of the city against a claim that property in the car at the time of impounding "mysteriously disappeared" while the car was in the custody of the authorities.

In Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968) the Supreme Court approved reasonable police conduct which protected an impounded car. The court stated:

"A regulation of the Metropolitan Police Department requires the officer who takes an impounded vehicle in charge to search the vehicle thoroughly, to remove all valuables from it, and to attach to the vehicle a property tag listing certain information about the circumstances of the impounding. Pursuant to this regulation, and without a warrant, the arresting officer proceeded to the lot to which petitioner's car had been towed, in order to search the vehicle, to place a property tag on it, to roll up the windows, and to lock the doors. The officer entered

on the driver's side, searched the car, and tied a property tag on the steering wheel. Stepping out of the car, he rolled up an open window on one of the back doors. Proceeding to the front door on the passenger side, the officer opened the door in order to secure the window and door. He then saw the registration card, which lay face up on the metal stripping over which the door closes. The officer returned to the precinct, brought petitioner to the car, and confronted petitioner with the registration card. Petitioner disclaimed all knowledge of the card. The officer then seized the card and brought it into the precinct. Returning to the car, he searched the trunk, rolled up the windows, and locked the doors.

"The sole question for our consideration is whether the officer discovered the registration card by means of an illegal search. We hold that he did not. The admissibility of evidence found as a result of a search under the police regulation is not presented by this case. The precise and detailed findings of the District Court, accepted by the Court of Appeals, were to the effect that the discovery of the card was not the result of a search of the car, but of a measure taken to protect the car while it was in police custody. Nothing in the Fourth Amendment requires the police to obtain a warrant in these narrow circumstances." 390 U.S. at pp. 235–236, 88 S.Ct. at p. 993.

This reasoning might easily lead to a conclusion that reasonable measures taken to protect an impounded car and personal property in plain sight within it are not a search within the scope of the Fourth Amendment. However, it is not necessary for us to reach the issue of whether this police conduct was a search. It is enough to hold that under the facts of this case the action of the patrolman in safeguarding valuable property in plain sight in a lawfully impounded car was reasonable, and hence not prohibited by the Fourth Amend-

ment. That amendment, of course, does not prohibit all searches; it forbids only unreasonable searches. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950); United States v. Novick, 450 F.2d 1111 (9th Cir. 1971).

We note that police regulations, such as the one involved in *Harris*, requiring a thorough search and inventory of the contents of impounded cars are frequently standard procedure. Such inventories are gaining judicial acceptance within what Judge Roney has called the "maturing law of search and seizure." United States v. Edwards, 441 F.2d 749, 755 (5th Cir. 1971).

Although inventories of personal property may extend beyond those items in plain view to a search of glove compartment and trunk, for the purpose of safeguarding private property and protecting the government against false claims, the federal courts have upheld such procedures. United States v. Pennington, 441 F.2d 249 (5th Cir. 1971), cert. denied 404 U.S. 854, 92 S.Ct. 97, 30 L.Ed.2d 94 (1971); United States v. Robbins, 424 F.2d 57 (6th Cir. 1970), cert. denied 402 U.S. 985, 91 S.Ct. 1674, 29 L.Ed.2d 151 (1971); United States v. Lipscomb, 435 F.2d 795 (5th Cir. 1970), cert. denied 401 U.S. 980, 91 S.Ct. 1213, 28 L.Ed.2d 331 (1971). *See also* United States v. Boyd, 436 F.2d 1203 (5th Cir. 1971); United States v. Edwards, 441 F.2d 749 (5th Cir. 1971); and United States v. Sterling, 321 F.Supp. 1301 (E. D.La.1971). *Cf.* Heffley v. State, 83 Nev. 100, 423 P.2d 666 (1967), habeas corpus granted sub nom. Heffley v. Hocker, 420 F.2d 881 (9th Cir. 1969), vacated and remanded, 399 U.S. 521, 90 S.Ct. 2236, 26 L.Ed.2d 780 (1970), habeas corpus denied, 429 F.2d 1321 (9th Cir. 1970); Cabbler v. Commonwealth, 212 Va. 520, 184 S.E.2d 781 (1971); People v. Sullivan, 29 N.Y.2d 69, 323 N. Y.S.2d 945, 272 N.E.2d 464 (1971). *See also*: Comment, The Inventory Search of an Impounded Vehicle, 48 Chi.-Kent L.Rev. 48 (1971). *But cf.* Mozzetti v. Superior Court, 4 Cal.3d 699, 94 Cal. Rptr. 412, 484 P.2d 84 (1971).

Several of these cases go beyond what we are asked to do. We are concerned only with protection of valuable property in plain view in a lawfully impounded automobile—that is, with the reasonable action of the patrolman in picking up the watches, placing them in the already open sample case, and carrying the case and its contents back to the station house to be inventoried and held in safekeeping.

The patrolman did not open a closed briefcase or the trunk of the car. While it appears that he did remove watches from the glove compartment, no evidence was found there. We do not reach the question of whether any such evidence would have been admissible.

The District of Columbia Circuit has recently considered the issue before us. United States v. Fuller, 277 F.Supp. 97 (D.D.C.1967); conviction affirmed, sentence vacated, case remanded for resentencing 139 U.S.App.D.C. 375, 433 F.2d 533 (1970). Defendant was arrested for operating a motor vehicle without running lights and without a valid driver's license. He was unable to post bail and was confined. Pursuant to standard police procedure, the arresting officer

"proceeded directly to the parking lot to secure the vehicle, a procedure requiring the removal of all valuables for safekeeping, rolling up the windows, and locking the car. He noticed an eyeglass case partially protruding from beneath the front seat of the vehicle, and discovered within it 10 vials of a drug called Methergine and a bottle containing 45 tablets of a drug called Desoxyn." 277 F.Supp. at p. 98.

The district court ruled that this was not an unreasonable search. It stated:

"Certainly, the Police had a duty to protect the interior of the car from the elements by making sure that the windows were rolled up. The practice of protecting whatever valuables may be found in an automobile by keeping them in an envelope inside the precinct is not only not unreasonable, but

is also in the public interest where it is not utilized as a substitute for a search without a warrant. It is not unusual for items to disappear from parked vehicles in this jurisdiction, in spite of well lit parking lots and locked doors. In Harris v. United States, supra, fn. 1, incriminating evidence was discovered by an officer as he opened a door to roll up a window in the process of securing an impounded vehicle. Here, as there, the item was not found in the glove compartment, or trunk of the vehicle. Here, as there, the item seized was in open view, and proved upon closer examination to be of a suspicious nature. Here, as there, there is no indication that a search for evidence of crime was being made. The Fourth Amendment does not proscribe *all* searches, but only those which are unreasonable. Where a search is conducted as a service to an individual, as in Vauss v. United States, 125 U.S. App.D.C. 228, 370 F.2d 250 (1966), evidence of a crime accidentally discovered need not be suppressed. The protection of a man's property is no less a service than that which was being rendered in *Vauss.* [search of unconscious person for purpose of discovering identification and preparing hospital report]" 277 F.Supp. at pp. 99–100.

The District of Columbia Circuit affirmed the conviction. It stated: "The [district] court's findings and conclusions on this score [the securing of the car] are peculiarly within the scope of Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968)." 433 F.2d at p. 534, n. 1. We note that in *Fuller* the eyeglass case was closed and the officer opened it. Here the sample case was already open.

Mitchell urges Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L. Ed.2d 777 (1964) and Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L. Ed.2d 685 (1969). Without considering whether *Harris, supra,* Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.

Ed.2d 730 (1967), and Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L. Ed.2d 419 (1970) have limited *Preston,* we note that *Preston* and *Chimel* are clearly distinguishable. There, the intent of the search was exploratory, i. e., to obtain evidence. Here, there was arguably no search; and, if there was, it was a reasonable effort to safeguard the property of the owner of the vehicle and the interest of the city in protecting itself against false claims. *See* United States v. Lipscomb, 435 F.2d 795, 800 (5th Cir. 1970), cert. denied 401 U.S. 980, 91 S.Ct. 1213, 28 L.Ed.2d 331 (1971), reh. denied 402 U.S. 966, 91 S. Ct. 1635, 29 L.Ed.2d 131 (1971):

"We agree that there is nothing in *Preston* or *Chimel* that forbids the result we reach here. Both cases concern limits on the attempts of police officers to locate and confiscate incriminating evidence. *Chimel* in particular was an effort to forestall 'the increasing legitimation of wide-ranging warrantless searches of lodgings and buildings based on the fortuity of arrest on the premises, which had been ushered in by United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950).' United States v. DeLeo, 1 Cir. 1970, 422 F.2d 487, 492. *Preston* and *Chimel* are thus inapposite in a case such as this, in which the police officers were not attempting to obtain evidence but were simply following their standard procedure for the safekeeping of the accused's possessions."

People v. Sullivan, 57 Misc.2d 208, 292 N.Y.S.2d 37 (1968), is a trial court decision from the state of New York. We agree with the views expressed by the New York Court of Appeals in reversing the trial court. People v. Sullivan, 29 N.Y.2d 69, 323 N.Y.S.2d 945, 272 N.E.2d 464 (1971).

We are not unmindful of the possibility that irresponsible or overzealous police officers may attempt to conduct illegal warrantless searches under the guise of protecting impounded cars and their contents. However, the responsible po-

lice conduct before us is not such a case. We are unwilling to say that the danger of a pretextual search is so great that we must condemn reasonable steps taken to protect valuable property in plain view within lawfully impounded automobiles.

Reversed and remanded to the district court for further proceedings.

ELY, Circuit Judge (dissenting):

I respectfully dissent. Not only do I find the majority's conclusion unacceptable, I am also disturbed over the reasoning by which that conclusion is reached.

The Supreme Court has long struggled to define the power of the police to search vehicles. *See, e. g.*, Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).[1] In its attempt, the Court has always undertaken to balance the interests of the police with those of the drivers whose automobiles are searched. As I read the majority opinion, it does not meet our Fourth Amendment problem with engagement into the balancing process required of

us. Consequently, I submit that it sanctions a practice that circumvents the Supreme Court's decisions and unnecessarily upsets the desired balance. In carefully articulating those rules which limit the scope of vehicle searches, the Supreme Court has, I think, endeavored to reconcile the legitimate interests of society as a whole with the justified interest of a driver in the security and privacy of his automobile. In *Preston, supra*, for example, the post-impoundment exploratory search of a vehicle, in which four vagrancy suspects had been arrested, was held unconstitutional. The court wrote:

"We think that the search was too remote in time or place to have been made as incidental to the arrest and conclude, therefore, that the search of the car without a warrant failed to meet the test of reasonableness under the Fourth Amendment, rendering the evidence obtained as a result of the search inadmissible."[2]

376 U.S. at 368, 84 S.Ct. 881, 884, 11 L.Ed.2d 777, 781. There are marked similarities between *Preston* and the case at hand. I can discern only one significant difference. That is that, here, there is the effort to justify the search on grounds that apparently were not urged in *Preston*.[3] I do not underestimate the

---

1. Our court has not ignored these decisions in the past. *See* Barrentine v. United States, 434 F.2d 636 (9th Cir. 1970).

2. Cases such as *Cooper, supra*, and *Carroll, supra*, in which some police conduct was held constitutionally permissible are not inconsistent with this result. They merely reflect the delicate balancing that is required. *See* Camara v. Municipal Court, 387 U.S. 523, 536–537, 87 S.Ct. 1727, 1734–1735, 18 L.Ed.2d 930, 940 (1967).

3. The same limited distinction differentiates this case from our prior decision in *Barrentine, supra*.

The state does not contend that the search of Mitchell's car is justifiable as a search incident to arrest—such an argument would be readily dismissed upon the authority of *Preston*. Nor does the state argue that there was either probable cause to believe that Mitchell's car con-

tained contraband or evidence of crime or that consent to the search had been given. Neither contention could be supported by the record. *See Barrentine, supra.*

In this connection I note the majority's reference to Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), and to Heffley v. Hocker, 420 F.2d 881 (9th Cir. 1969), vacated, sub nom. Hocker v. Heffley, 399 U.S. 521, 90 S.Ct. 2236, 26 L.Ed.2d 780, reversed on remand 429 F.2d 1321 (9th Cir. 1970). Those cases are wholly inapposite here. They sanction searches of impounded vehicles only where, at the time a vehicle is seized, there is probable cause to search it for contraband or evidence of crime. There is no indication here that prior to their search the police had any suspicions regarding the contents of Mitchell's automobile.

importance of this distinction. In a close case, resolving the question of whether a search is reasonable under the Fourth Amendment does indeed require that we "focus upon the governmental interest which allegedly justifies official intrusion upon the constitutionally protected interests of private citizens." Camara v. Municipal Court, 387 U.S. 523, 534–535, 87 S.Ct. 1727, 1734, 18 L.Ed.2d 930, 939 (1968). In applying the appropriate test, I have concluded that in our case my Brothers have not correctly "balance[d] the need to search against the invasion which the search entails." *Id.* at 536–537, 87 S.Ct. 1727, 1735, 18 L.Ed.2d 930, 940.

While I can see the validity of some of those interests claimed to support careful so-called "inventory searches," I can also see that those interests are put forth with overbreadth.[4] If our attention is directed only to those interests, however valid, then we are led to the point where the interests may be held to justify too much. They could be viewed so as to support intrusions into a vehicle whenever it is taken into custody and regardless of the means by which the police acquired its control, the extent of the time period for which it is to be retained, and also, of course, the desires of the owner. Since any part of a vehicle, as well as any item within it, may, at any time, be stolen, lost, or damaged, the police have an interest in conducting an extensive inventory of a vehicle's contents. If this interest is deemed paramount, then it follows that any inventory search is constitutionally permissible.[5] Surely it cannot be that such a simplistic conclusion is valid. *See Preston, supra; cf.* United States v.

Thweatt, 140 U.S.App.D.C. 120, 433 F. 2d 1226, 1231 (1970). To the extent that such inventories are allowed, the privacy of drivers is sacrificed. Rights are accorded to the police while, at the same time, more fundamental rights are withdrawn from others. Governmental interests, vis-a-vis those of our citizens, are not necessarily supreme. *See Camara, supra.* A delicate balance between conflicting public and private interests must be achieved, 387 U.S. at 536–537, 87 S.Ct. 1727, 1735, 18 L.Ed.2d 930, 940 (1968).

My Brothers attempt reconciliation by drawing a distinction based upon the extent of the search. As I see it, this effort is a waste, since decisions based upon that kind of compromise do not reflect the considerations relevant to Fourth Amendment problems. Necessarily, they can be based upon "little more than a subjective view regarding the acceptability of certain sorts of police conduct." Chimel v. California, 395 U.S. 752, 764, 89 S.Ct. 2034, 2040–2041, 23 L.Ed.2d 685, 694–695 (1969). I cannot accept a principle which, for example, might permit a search beneath a vehicle's front seat or within its glove compartment but might vitiate the search of a closed handbag or suitcase found in the automobile. Yet, that is the uncertain principle which derives from the "subjective view." *Compare* United States v. Fuller, 277 F.Supp. 97 (D.D.C.1967), conviction affirmed, sentence vacated, case remanded for resentencing, 139 U.S.App.D.C. 375, 433 F.2d 533 (1970) and United States v. Pennington, 441 F.2d 249 (5th Cir. 1971) *with* Mozzetti v. Superior Court, 4 Cal. 2d 699, 484 P.2d 84, 94 Cal.Rptr. 412

---

4. The Supreme Court has never fully considered the constitutional significance of these purposes for police searches. However, in Cooper v. California, 386 U.S. 58, 60, 87 S.Ct. 788, 790, 17 L.Ed.2d 730, 732 (967), the Court commented on the meaning of its decision in *Preston.* It wrote, "[t]he search was therefore to be treated as though the car was in his own or his agent's possession, safe from intrusions by the police. . . . ."

5. The possible relevance of the views expressed in this opinion to all property seized through inventory searches is obvious. I do not, however, express any view about the validity of inventory searches of things other than vehicles. Other purposes may justify searches in those situations. *See, e. g.,* Westover v. United States, 394 F.2d 164 (9th Cir. 1968).

(1971). "Under such an unconfined analysis, Fourth Amendment protection[s] . . . approach the evaporation point."[6] *Chimel, supra,* 395 U.S. at 765, 89 S.Ct. 2034, 2041, 23 L.Ed.2d 685, 695 (1969). A principle which depends for its application upon the "subjective view" can afford, even at its best, only partial protection for both the police and those whose privacy is violated. There should be, and I think there is, a solution that is more satisfactorily accommodating to both the police and the owners of seized vehicles. This is to permit extensive inventory searches of seized vehicles, so as fully to protect the police, but to forbid, over the objection of one having standing, the use of any item seized in the search as evidence against the objector, assuming, of course, that the evidence would not otherwise be admissible under Fourth Amendment principles. The adoption of such a rule, which has already gained some support,[7] would, I believe, work an effective compromise between significantly conflicting interests and most nearly effectuate the delicate and even balance for which we are supposed to strive. Moreover, such a rule would appear to comport with the Supreme Court's pronouncement that "evidentiary rulings provide the context in which the judicial process of inclusion and exclusion approves some conduct as comporting with constitutional guarantees and disapproves other actions by state agents." Terry v. Ohio, 392 U.S. 1, 13, 88 S.Ct. 1868, 1875, 20 L.Ed.2d 889, 901 (1968). While inventory searches of vehicles may be necessary for the full protection of the police who have seized such vehicles, they entail invasions no less intrusive than those which might be made pursuant to an illegal warrant. To permit them undermines sound Fourth Amendment principles. Hence, I cannot believe that all evidence uncovered in such searches should be admissible.[8] The California Supreme Court, recently described in United States Law Week, as "Long a leader" (40 U.S.L.W. 1129), appears to believe that the concept of inventory searches is abhorrent. *See* Mozzetti v. Superior Court, *supra. See also* People v. Miller, Cal., 496 P.2d 1228, 101 Cal. Rptr. 860 (1972). I can uphold them, but I believe that they can comport with Fourth Amendment guarantees only insofar as they cannot be employed to aid in the prosecution of one whose right to privacy has, by the search, been infringed.

I also reject (1) the majority's resolution of the issue of reasonableness and (2) the majority's suggestion that the impounding officer might not have been engaged in a search.

I do not dispute the validity of the procedures which led to the discovery of the watches. In Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L. Ed.2d 1067 (1968), extensively quoted by the majority, the Supreme Court conclusively held that property found in plain view by a police officer securing an impounded vehicle may constitutionally be seized. Here, the majority at-

---

6. The *situation here is different than* that analyzed by the Supreme Court in *Chimel* or Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Those cases involved circumstances fully amenable to a decision determining reasonableness upon the basis of the search because the legitimate objectives of the police could be fully protected by the allowance of a limited search. Here, in contrast, a search limited in its scope would not wholly fulfill the purposes of the intrusion. The police interests can be met only by an intensive search, revealing all of the property which might be stolen, lost, or damaged. Obviously, such an extensive intrusion completely deprives the property owner of his right to the privacy of his property.

7. *See* Mayfield v. United States, 276 A.2d 123 (D.C.C.A.1971) ; Stroud, The Inventory Search and the Fourth Amendment, 4 Ind.Leg.Forum 471, 479–486 (1971).

8. In *Terry,* the Supreme Court discussed, at length, the limitations of the exclusionary rule as a tool of judicial control over police conduct. 392 U.S. at 13–15, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Nothing therein convinces me that the rule should not be applied in this unique context.

tempts to rely upon the valid seizure of the watches as the basis for the subsequent search of the sample case by characterizing that search as "reasonable steps taken to secure valuable property in plain view." [9] I do not think the "plain view" doctrine can be, or should be, so applied as to bootstrap the police from "one object to another until something incriminating at last emerges." Coolidge v. New Hampshire, 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564, 583 (1971) (Stewart, J.).[10]

I turn to the majority's suggestion that "reasonable measures taken to protect . . . personal property in plain sight within [an impounded vehicle] are not a search within the scope of the Fourth Amendment." [11] I do not dispute the accuracy of this proposition in the abstract, for in some cases, it is probably correct [E. g., where mere removal of property from the vehicle reveals the incriminating evidence.]. I do, however, strongly disagree with the majority's implication that such a principle is applicable here. The majority incorrectly interprets *Harris*. That case did not involve protective measures which unnecessarily intruded upon Harris' privacy and might have been characterized as a search. Furthermore, the Court reserved judgment on the "admissibility of evidence found as a result of a search under the police regulation" at issue. 390 U.S. at 236, 88 S.Ct. 992, 993, 19 L.

Ed.2d 1067, 1069–1070 (1968). Hence, that case indicates nothing about whether unnecessary intrusions, however reasonable they might be if judged on the basis of their convenience to the police, entail a search under relevant Fourth Amendment criteria. Moreover, since the search in our case extended beyond the "plain view" of anyone, that there was a search should be the inevitable conclusion. In Terry v. Ohio, *supra*, the Supreme Court rejected a circumscribed, semantic approach to the definition of "search" and "seizure" under the Fourth Amendment. "In our view, the sounder course is to recognize that the Fourth Amendment governs all intrusions by agents of the public upon personal security, and to make the scope of the particular intrusion, in light of all the exigencies of the case, a central element in the analysis of reasonableness. [Citations]." 392 U.S. at 18 n. 15, 88 S.Ct. 1878, 20 L.Ed.2d 904 (1968).[12] Undertaking to draw fine distinctions between "searches" and "inventories" and "reasonable measures taken to protect property in plain sight" serves, in this case, only to divert attention from the critical inquiry which, under Fourth Amendment principles, should be conducted. *See also* Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); Mozzetti v. Superior Court, 4 Cal.3d 699, 484 P.2d 84, 94 Cal.Rptr. 412 (1971).[13]

I would affirm.

---

9. In adopting this reasoning, the majority may reach the correct result, but its reasoning is faulty. If the result is correct, that is because, if one permits inventories at all, looking into the opened sample case was reasonable. The intrusion was slight, there was a high degree of probability that it contained property of some value, and its location in the automobile made it a ready target for theft. The need to search would therefore permit further examination of the case. The reasoning is faulty because the majority's approach to the search of the case is not based upon consideration of principles relevant to the Fourth Amendment, such as the need to search and the extent of the intrusion. Rather,

it is based upon a determination that it was convenient for the police to place the watches in the case, a factor I deem irrelevant under the Fourth Amendment.

10. The district judge expressly found that the pistol was not in plain view.

11. The majority also writes, "[h]ere, there was arguably no search."

12. The Court's recent decision in Wyman v. James, 400 U.S. 309, 91 S.Ct. 381, 27 L.Ed.2d 408 (1971), does not disturb this analysis as it is applied here. *See generally* People v. Mozzetti, 4 Cal.2d 699, 711–712, 484 P.2d 84, 92, 91 Cal. Rptr. 412, 420 (1971).

13. The *Mozzetti* decision is favorably reviewed in 40 Fordham L.Rev. 679 (1971).