■ THOMAS F. SMITH, Respondent, v. COUNTY OF NASSAU, Appellant.— In an action to recover damages *inter alia* for false arrest, defendant appeals (1) from so much of an order of the Supreme Court, Nassau County, dated May 28, 1971, as denied its motion to set aside a jury verdict of $15,000 in favor of plaintiff upon the first two causes of action (false arrest and false imprisonment) and (2) from a judgment of the same court, entered June 4, 1971, upon said verdict. (The order also granted defendant's motion to set aside a jury verdict in favor of plaintiff upon the fourth cause of action [negligence] and directed that judgment be entered in favor of defendant on that cause; and the third cause of action [malicious prosecution] was dismissed during the trial.) Order reversed insofar as appealed from, and judgment reversed, on the law, without costs, motion to set aside the verdict on the first two causes of action granted, and complaint dismissed in its entirety. The sole issue here is whether there was reasonable cause, as a matter of law, for believing plaintiff committed a felony so as to justify his arrest without a warrant. The facts are that on May 30, 1966 at about 11:00 P.M., one Earl Pugh, a complainant, and a female friend were seated in his automobile in a parking field opposite a church on Walden Street in Westbury. A man using a shotgun fired three shots at the car, damaging the windshield and a side window. There is no question a felony took place. Pugh immediately reported the occurrence to the police, describing the assailant as heavy set, about five feet

seven to eight inches tall, with sandy colored or blond hair and wearing dark clothing and glasses. About two weeks after the commission of the felony, on a Sunday, Pugh and the arresting officer were visiting homes in the vicinity of the crime. They came to plaintiff's home. It was then that Pugh identified plaintiff. Pugh and the arresting officer returned to the police station where Pugh signed a statement wherein he stated plaintiff was the man who fired upon him on May 30, 1966. The arresting officer returned to plaintiff's home and arrested him without a warrant. Plaintiff was placed in jail and spent four hours in a cell before bail was procured. He was arraigned on the following day. The next day a hearing was held and the charges against plaintiff were dismissed. During plaintiff's trial in this action, defendant moved to dismiss the complaint upon the ground that plaintiff had failed to make out a prima facie case in that he had failed to show that the arresting officer lacked reasonable cause for the arrest pursuant to section 177 of the Code of Criminal Procedure. Defendant's counsel pointed out to the trial court that plaintiff had admitted, during his arraignment, that Pugh had identified him as the assailant. Defendant contended that such positive identification by Pugh constituted reasonable cause as a matter of law. The court reserved decision on the motion. Subsequently, the court charged the jury that defendant had the burden of proof as to whether the arresting officer had probable cause for believing plaintiff had committed the felony. The jury, the court charged, was to determine the question whether the arresting officer had acted as a reasonably prudent person would have acted. In our opinion defendant's motion to dismiss the complaint, made at the end of plaintiff's case and renewed at the end of the entire case, should have been granted. We believe plaintiff failed to make out a prima facie case that the arresting officer had lacked probable cause to arrest plaintiff. Section 177 of the Code of Criminal Procedure (in effect at the time in question) allowed a peace officer to make an arrest without a warrant when a felony had in fact been committed and the peace officer had reasonable cause for believing the person arrested had committed it. Here, it is undisputed that a felony had been committed. The complainant positively identified plaintiff as the assailant. These undisputed facts provided reasonable cause, as a matter of law, for plaintiff's arrest without a warrant. The police officer might well have been charged with a dereliction of duty if he had not made the arrest after the complainant had not only identified plaintiff as his assailant but had also signed a statement to that effect. Hopkins; Acting P. J., Shapiro, Gulotta and Benjamin, JJ., concur. Munder, J., dissents and votes to affirm the order insofar as appealed from and to affirm the judgment, with the following memorandum: Plaintiff, after a jury trial, has recovered for false arrest and imprisonment. He was arrested on June 12, 1966 for a crime which had been committed on May 30. The defense relied upon subdivision 3 of section 177 of the Code of Criminal Procedure, which sanctions an arrest by a peace officer without a warrant when a felony has in fact been committed and the officer has reasonable cause for believing the person to be arrested committed it. On May 30, 1966 at about 11:00 P.M., one Earl Pugh and a female friend were seated in his automobile, in a parking field opposite a church on Walden Street in Westbury. A man using a shotgun fired three shots at the car, damaging the windshield and a side window. Thus, there is no question that a felony took place. The sole issue is whether there was reasonable cause for believing that plaintiff committed the felony so as to justify his arrest without a warrant. That was a factual question for the jury (*Thompson* v. *Fisk*, 50 App. Div. 71; *Stearns* v. *New York City Tr. Auth.*, 24 Misc 2d 216; *Barnes* v. *Bollhorst*, 28 Misc 2d 866, affd. 14 A D 2d 774).

On the proofs before the jury, its finding of no reasonable cause, in my opinion, was justified. Defendants argue that the arrest was made upon the positive identification of the victim and therefore was lawful. But identification by the victim does not per se supply the probable cause which makes an arrest lawful. The test for probable cause to support a lawful arrest, as stated in Corpus Juris Secundum (6 C.J.S., Arrest, § 6, p. 596), is "Where an officer, in good faith, believes that a person is guilty of a felony, and his belief rests on such grounds as would induce an ordinarily prudent and cautious man, under the circumstances, to believe likewise". It was approvingly quoted by Chief Judge Desmond in *People* v. *Coffey* (12 N Y 2d 443, 451) and was paraphrased by my colleague Mr. Justice Shapiro in *People* v. *Smith* (62 Misc 2d 473). The test requires more than simply good faith. " If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be ' secure in their persons, houses, papers, and effects,' only in the discretion of the police" (Mr. Justice Stewart in *Beck* v. *Ohio*, 379 U. S. 89, 97). The record at bar shows that the identification was so weak as to be worthless. At least, it should have raised considerable doubt in a trained, reasonably conscientious police officer. The arresting officer in this case was a 17-year veteran. He knew that the victim had identified someone other than plaintiff as the assailant on the night of the crime. The description given by the victim immediately after the incident pictured the assailant as 5 feet, 7 to 8 inches tall, heavy set, sandy-colored blond or grey hair and wearing glasses. Actually, plaintiff was 6 feet, 2 inches in height, of average frame, had grey hair and did not wear glasses. I think the following excerpt from a 19th century English case is most appropriate: "But if from the circumstances it appears to be an unfounded charge, the constable is not only not bound to act upon it, but he is responsible for so doing" (see Harper & James, *op. cit. infra*, p. 278, quoting from *Hogg* v. *Ward*, 3 Hurl. & N. 417, 157 Eng. Rep. 533, 535 [1858]). But there were other factors. As noted above, about two weeks had gone by after the crime. Plaintiff was arrested in his home, in the presence of his family, on a Sunday afternoon. He had lived in the neighborhood for many years, had never had difficulty with the law and bore a good reputation. The arresting officer had appeared at plaintiff's home briefly on the morning of the arrest and it was then that the victim identified plaintiff. He and Pugh returned to the station house where the victim signed a statement in which he said, "This man Smith [plaintiff] is the man who fired at me on May 30, 1966." Although there was nothing to suggest flight or any other exigency, the officer did not procure an arrest warrant. Armed only with the statement, the officer arrested plaintiff, despite his vehement protests of innocence. A lawyer who lived nearby urged the police not to proceed too hastily, but to no avail. Plaintiff was placed in jail on a day when bail would not be easily obtained (see, generally, 1 Harper & James, Law of Torts, § 3.18 [1956]). He spent four hours in a cell before bail was procured. He was arraigned before the court on the following day on an information signed by the victim, Pugh. Bail was continued and a hearing was held on the next day, Tuesday. The charges against plaintiff were dismissed. The victim did not testify at the hearing. It is significant that no indictment was ever sought. An indictment by a Grand Jury is prima facie evidence that the arresting officer had reasonable cause to believe the person arrested was guilty of the crime charged (see *Morgan* v. *New York Cent. R. R. Co.*, 256 App. Div. 177). An indictment raises a presumption which the plaintiff in a subsequent action for false imprisonment must overcome. Plaintiff at bar had no such burden. Plaintiff, in my opinion, produced more than enough evidence to show that the charge made

against him by the victim was unfounded. Under these circumstances, the police officer should not have acted, or so the trier of the facts could find.