## Richmond

### Herbert W. Cabbler v. Commonwealth of Virginia.

November 29, 1971.

Record Nos. 7744, 7745, 7746, 7747 and 7748.

Present, All the Justices.

*John H. Kennett, Jr.*, for plaintiff in error in Record Nos. 7744, 7745, 7746, 7747 and 7748.

*Gilbert W. Haith, Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for defendant in error in Record Nos. 7744, 7745, 7746, 7747 and 7748.

Harman, J., delivered the opinion of the court.

The defendant, Herbert W. Cabbler, appeals from five final orders sentencing him to a total of eleven years in the state penitentiary and fines totaling $1,000.00. Cabbler was convicted on three counts of grand larceny and two counts of petit larceny after a consoli-

dated trial by jury. The jury's finding in each instance was that the larceny was committed by receiving stolen property.

The defendant claims that the trial court erred in three respects. These are: (1) the admission in evidence of stolen goods found in Cabbler's car; (2) the granting of any instructions on receiving stolen property when the Commonwealth elected to rely on the general larceny statutes for conviction; and (3) the granting of other instructions tendered by the Commonwealth setting forth the presumptions which arise from the possession of recently stolen property.

*I*

The defendant was arrested at approximately 1:30 a.m. on September 2, 1969, at Community Hospital in Roanoke by Sergeant R. C. Reynolds of the Roanoke Police Department on a felony charge (shooting into an occupied dwelling). The validity of this arrest is not challenged.

Sergeant Reynolds had observed Cabbler enter the hospital after parking his Cadillac automobile. The car was parked in a no parking zone on a private driveway belonging to the hospital in such a manner as to partially block the ambulance driveway leading to the hospital emergency entrance.

After Cabbler's arrest he asked Reynolds to close the windows on his car, which he pointed out to the officer, as it was raining. Reynolds, after closing the car windows, advised Cabbler that the car would be removed from the hospital driveway to the City Garage for safekeeping until Cabbler's release from custody. Cabbler made no complaint or protest to this although he later testified at trial that he had already arranged to have the car "picked up" by one of his employees.

The car, before being stored in the City Garage, was taken to the police property room where the contents of the car were to be removed, inventoried and stored for safekeeping. It was then that the police discovered the stolen goods that resulted in Cabbler's later convictions.

The defendant argues that discovery of the contraband resulted from an unlawful search and seizure and that this evidence should have been suppressed by the trial court.

The Attorney General does not attempt to justify discovery of the stolen goods as a search incident to a lawful arrest. He says that the action of the police in removing Cabbler's car from the drive-

way of the hospital to a place of safekeeping and the removal and inventory of the contents of the car were reasonable acts performed under procedures established by the Roanoke Police Department for the protection of property in the possession of a person arrested away from his place of residence.

The evidence discloses that the procedure followed in this case was the result of a long-standing practice and policy of the Roanoke Police Department. One witness testified that this policy was already in effect when he was first employed, more than 28 years earlier, by the department. The policy is that the police, when arresting a person away from his place of residence in possession of property, including automobiles, will take temporary custody of the property for safekeeping unless other immediate means are available to protect such property.

Prior to 1964 or 1965 it was not customary to remove, inventory and separately store the contents of vehicles which came into possession of the police for safekeeping unless the police were specially requested to do so. In 1964 or 1965, however, complaints were made and claims for reimbursement filed by the owners of vehicles who claimed property was lost or stolen while their cars were so stored. The procedure for removal, inventory and separate storage of the contents of vehicles in safekeeping was instituted then in an effort to prevent theft or loss of property from stored vehicles.

It has always been the public policy of the Commonwealth to preserve and protect the individual rights of its citizens. Public policy also dictates that a citizen's rights in his property shall likewise be preserved and protected. Thus it would appear, and we so hold, that the policy established and the procedure followed by the Roanoke Police Department to protect the property of a citizen arrested away from his home in possession of property where no other immediate means is available for safekeeping of such property are reasonable and in accord with the public policy of the Commonwealth set forth earlier.

The Fourth Amendment does not forbid all searches and seizures but only those that are unreasonable. *Terry* v. *Ohio,* 392 U.S. 1, 9 (1968); *Kirby* v. *Commonwealth,* 209 Va. 806, 167 S.E. 2d 411 (1969). Whether a particular search is unreasonable within the meaning of the Fourth Amendment depends upon the particular facts and circumstances of the case. *Dyke* v. *Taylor Implement Mfg. Co.,*

391 U.S. 216 (1968); *Cooper* v. *California*, 386 U.S. 58, 59 (1967); *Preston* v. *United States*, 376 U.S. 364, 366-67 (1964).

The Fourth Amendment does not preclude the state from developing workable rules governing arrests, searches and seizures to meet the practical demands of effective criminal investigation and law enforcement in the states, provided that those rules do not violate the constitutional proscription of unreasonable searches and seizures and the concomitant command that evidence illegally seized is inadmissible. *Ker* v. *California*, 374 U.S. 23, 24 (1963); *Sibron* v. *New York*, 392 U.S. 40, 60-61 (1968).

Upon the facts before us we hold that the policy established by the Roanoke Police Department and the procedure followed in connection therewith are such reasonable rules governing arrests as were contemplated in *Ker* and *Sibron*. Such a policy is in accord with the public policy of the Commonwealth, is not violative of the defendant's Fourth Amendment rights and serves the best interest of the property owner by protecting and safeguarding the property in his possession at the time of his arrest.

We therefore find this assignment of the defendant to be without merit.

## II

██ Next we consider the defendant's claim that the trial court erred in instructing the jury on receiving stolen property when the Commonwealth had elected to rely upon the general larceny statutes for conviction.

The five indictments against the defendant charged him with three counts of grand larceny under Code § 18.1-100 and two counts of petit larceny under Code § 18.1-101.

Prior to trial the defendant demanded, as he was entitled under Code § 18.1-109, that the attorney for the Commonwealth advise him of the statute relied on to ask for conviction in each case. He was advised that the Commonwealth elected to rely on the statute as set forth in each of the indictments.[1]

In the trial court the defendant objected to the giving of instructions on receiving stolen property on the ground that the Commonwealth had elected to rely on the general larceny statutes and not on Code § 18.1-107 which reads in pertinent part:

---

[1] The three grand larceny indictments referred specifically to Code § 18.1-100 and both of the petit larceny indictments referred to Code § 18.1-101.

"If any person . . . receive from another person . . . any stolen goods . . . knowing the same to have been stolen, he shall be deemed guilty of larceny thereof . . . ."

He argues here, as he did below, that the failure of the Commonwealth to specify Code § 18.1-107 in its election precluded the court from instructing the jury on larceny by receiving stolen goods.

Larceny by receiving stolen goods is a lesser offense which is included in the major one of larceny. *Branch* v. *Commonwealth*, 184 Va. 394, 35 S.E.2d 593 (1945); see also *Dove* v. *Peyton*, 343 F.2d 210 (4th Cir. 1965). The lesser offense is indictable as larceny, *Clark* v. *Commonwealth*, 135 Va. 490, 115 S.E. 704 (1923), and the accused may be convicted of the lesser offense of receiving stolen goods. *Stapleton* v. *Commonwealth*, 140 Va. 475, 124 S.E. 237 (1924).

Thus the Commonwealth's election to proceed against the defendant for the greater offenses under the general larceny statutes did not preclude the giving of instructions on and the conviction of the defendant of the lesser offenses of larceny by receiving stolen property.

### III

The defendant's argument that the court erred in the instructions granted explaining the presumptions which arise from possession of recently stolen property is without merit.

*Affirmed.*