469 A.2d 615

COMMONWEALTH of Pennsylvania

v.

**George A. CORBIN, Jr., Appellant.**

Superior Court of Pennsylvania.

Submitted April 13, 1982.

Filed Nov. 18, 1983.

Petition for Allowance of Appeal Denied April 18, 1984.

William C. Kriner, Clearfield, for appellant.

F. Cortez Bell, III, Assistant District Attorney, Clearfield, for Commonwealth, appellee.

Before HESTER, JOHNSON and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from the Order of the Court of Common Pleas of Clearfield County (per President Judge Reilly) denying, in part, appellant's, George A. Corbin's, ineffectiveness of counsel claim. *See* note 2, *infra.* We reverse and remand.

We have reviewed all of appellant's claims and find that the only one meriting discussion concerns trial counsel's failure to file pre-trial motions. For the reasons that are

discussed *infra,* we maintain that trial counsel was ineffective for failing to file a motion to suppress the evidence obtained during the course of the police's examination of the glove compartment and trunk of a vehicle linked to the appellant *if* no warrant existed to sanction the search and seizure.

■ Moreover, we find the cases of *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) and *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967) to be distinguishable from the case at bar. There, the United States Supreme Court authorized the search of impounded vehicles by police, days after their seizure, *for purposes of making an inventory of the contents* so as to protect themselves and avoid the consequences of owner claims against the police over lost or stolen property. Instantly, unlike in *Opperman* and *Cooper,* the police were utilizing a national handbook to assist them in locating the vehicle's registration number when the incriminating evidence was discovered. The purpose of the police's conduct was *not* to inventory the vehicle as a precaution against possible claims by the true owner for loss of contents. Rather, the search conducted was for the specific purpose of locating potentially incriminating evidence against the driver-appellant, and, thus, "was a pretext concealing an investigatory police motive." *South Dakota v. Opperman, supra,* 428 U.S. at 376, 96 S.Ct. at 3100. This is supported by the facts, i.e., after the appellant presented the police with a driver's license inconsistent with the name of the vehicle's owner, as told to them by the appellant, the police observed through the windshield that the vehicle's identification number was "gone." Thereafter, the vehicle was impounded and the *following day* the vehicle was searched and the evidence complained of (check-writing equipment, checks and a corporate seal) was seized from the glove compartment and trunk.

To adhere to any other position would be to sanction an illegal search for incriminating evidence under the guise of an inventory search, *especially given the facts available to*

*the police prior to the search which rendered the owner-*
*ship of the vehicle suspect.* In other words, the legal
owner of the impounded vehicle was brought into question
and the police's "protective procedures [were but] a subter-
fuge for criminal investigations." *South Dakota v. Opper-*
*man, supra,* 428 U.S. at 370 n. 5, 96 S.Ct. at 3097 n. 5. If
we were to approve of such an activity by the authorities,
henceforth the police could eschew the requirements of a
warrant to search an impounded vehicle regardless of the
object of their search. This goes far beyond what *Opper-*
*man* and *Cooper* envisioned.

▆▆▆▆ In light of the fact that the search conducted by
the police was *not* for inventory purposes, appellant's trial
counsel's action in failing to file a motion to suppress the
evidence seized raises a question as to his stewardship,
which was dealt with by the court below and raised by
appellant on appeal. In evaluating this claim, we observe
that we must make an independent review of the record and
decide if the course of action counsel is charged with not
pursuing had some reasonable basis. *Commonwealth v.*
*Byrd,* 250 Pa.Super. 250, 378 A.2d 921 (1977). Only if the
claim is ruled to be of arguable merit must we inquire into
counsel's reasons for not pursuing it. *Commonwealth v.*
*Strader,* 262 Pa.Super. 166, 396 A.2d 697 (1978).

▆▆▆▆ We find that the subject of the existence or non-exist-
ence of a warrant, which is *pivotal* to a determination of
counsel's stewardship, is not ascertainable from the docu-
ments provided to this Court, and, thus, another remand is
necessary.

For example, at the evidentiary hearing conducted at this
Court's direction, *see Commonwealth v. Corbin,* 268 Pa.Su-
per. 526, 408 A.2d 1128 (1979), to evaluate appellant's vari-
ous allegations of ineffectiveness attendant to his trials, one
of which occurred on November 14–15, 1977 and is of
concern to us here, counsel for appellant testified that he
filed no pre-trial suppression motion or post-trial motions

regarding the evidence seized by the Warren police. On this subject, the following exchange took place:

[By Mr. Kresner—appellant's new counsel:]

Q  Now, Mr. Corbin alleges, Mr. Blakley, that you were ineffective in failing to file Pre-Trial Motions prior to the November Trial. Did you consider filing any Pre-Trial Motions prior to the Trial?

[Benjamin S. Blakley, III—appellant's trial counsel:]

A  No, I didn't.

*       *       *       *       *       *

Q  He also alleges that you were ineffective in failing to object to certain evidence seized in the November Trial.

A  I did object to it ... [when appellant] leaned over to me and asked me to object to it [at defense table] because he felt that there was not sufficient identification. And at that time, on the record, I did object to it.

Q  And I don't believe you filed Post-Verdict Motions on that basis. What was the reason there?

*       *       *       *       *       *

A  Based on the testimony raised at Trial, it was my opinion that the automobile had been sufficiently identified and that my *Post-Trial Motions would have been frivolous.* So I did not file them.

Q  *Now, Mr. Corbin has alleged in testimony that you gave him a copy of your Motion for New Trial and/or Verdict in Arrest of Judgment and told him that it had been filed when ultimately no such Motion was filed. You would agree that no such Motion was filed?*

A  *I'll agree to that.*

Q  *Would you agree that you gave such to Mr. Corbin and indicated to him that such was filed?*

A  *I will assume that I gave a copy to Mr. Corbin—*

*       *       *       *       *       *

THE WITNESS: Mr. Corbin has a copy of the Motion that I had prepared. I do not recall telling him that I had definitely filed it. I—I believe that I discussed the

situation with Mr. Corbin. I cannot be sure, two years later, exactly what words were stated to Mr. Corbin.

\* \* \* \* \* \*

Q ... Appellant, Mr. Corbin, ... indicat[es] basically that there were Pre-Trial Motions which you could have filed which you did not file because of a lack of experience?

A I—it [—a letter written by Attorney Blakley to the appellant dated March 28, 1978—] doesn't specify Pre-Trial Motions, Post-Trial Motions, it just says certain things. There are certain tactical moves which I, had I been aware of them, and which I may become aware of ten years from now, I probably could have filed. I'm not aware of any. I suppose if I would have chosen to employ some delaying tactics or so forth, I might have been able to do it. I know of none now. Undoubtedly a more experienced attorney could—could have done it. I was explaining to Mr. Corbin, at the time of this Trial, I had been sworn in at the Supreme Court about a week and a half, a week before.

Q Before what, Mr. Blakley?

A Before this Trial.

Q Before the November Trial?

A Before the November Trial. I was sworn in the first week of November of '77. This was my first Trial. I was explaining to Mr. Corbin why certain—why I was not acting as an F. Lee Bailey.

\* \* \* \* \* \*

Q ... Would you read the exact sentence which is underlined [in the letter sent by you to the appellant and dated March 28, 1978.]

A *I realized at the November Trial there were certain things that I could have filed that I did not file and I told you this in January, the reason being that I was fresh out of law school and was not aware of the proper procedures at that time.*

Q   The proper procedures at that time.   In retrospect, Mr. Blakley, were there any Motions which you at this point feel that you should have filed but for your inexperience?

A   *There are Motions that I believe could have been filed but probably would have been frivolous.   I don't believe that I would have conducted myself any differently than I did at the time.   There are many things that could have been filed.*

(Emphasis added) (N.T. 10/17–18/79 at 159, 160–161, 162–163, 165–167)

Appellant's trial counsel's belief that the filing of a motion to suppress would have been a useless gesture was reaffirmed during his cross-examination by the Commonwealth's attorney; *viz.:*

Q   Now, you said that you could have filed a number of Pre-Trial Motions, but you felt that they were fruitless. I believe those were your words, is that correct?

A   Yes.

Q   That included your feeling that an attempt to Suppress this evidence taken and used against the Defendant would have been fruitless to file a Motion to Suppress that?

A   *Given what I knew, yes.*

(Emphasis added) (N.T. 10/17–18/79 at 174)

Keeping the aforesaid in mind, we turn to the *record* which reveals that on November 14, 1977, the date appellant's second trial commenced, appellant also was scheduled for criminal court for a third trial charging similar offenses arising out of a separate incident (but using the same evidence seized in the November trial) which resulted in his conviction on January 23, 1978.   Of interest here is the fact that on January 17, 1978 Attorney Blakley *did file* an "Omnibus Pre-Trial Motion For Suppression of Evidence" in which the following averments were made:

1.   That your Petitioner is charged with the crimes of forgery, receiving stolen property and criminal conspiracy.

2. That your Petitioner is scheduled for trial on January 23, 1977 [—sic 1978].

3. That the Commonwealth intends to introduce certain physical evidence obtained by the Warren PA Police Department from a Cadillac Eldorado allegedly belonging to the petitioner. Such evidence consisting of a checkwriting machine, a box of unused checks and a corporate seal.

4. That your Petitioner's rights will be violated by the introduction of the said physical evidence for the following reasons:

A) That the Warren Pa Police Department lacked probable cause to impound said Cadillac Eldorado prior to the search of said vehicle leading to the discovery of the aforesaid physical evidence.

B) *That the Warren PA Police Department failed to obtain proper search warrant before conducting a search of said Cadillac Eldorado.*

C) *That if a search warrant was issued prior to the search of said vehicle, such search warrant was issued without probable cause.*

D) That for the reasons set forth above, petitioners [sic] rights under the United States Constitution and Pennsylvania Constitution would be violated if the physical evidence obtained during the search of said Cadillac Eldorado is introduced.

WHEREFORE, your Petitioner respectfully requests that this Court direct the Commonwealth to show cause why the physical evidence obtained by the Warren PA Police Department should not be suppressed.

> Respectfully submitted,
> /s/ Benjamin Spencer Blakley III
> Benjamin Spencer Blakley III
> Assistant Public Defender

(Emphasis added) (Record at page 23)

On January 20, 1978, the date set for hearing appellant's Motion to Suppress, the court entered an Order granting the suppression of the evidence listed in the Motion because

"the District Attorney ... indicated no opposition thereto[.]" (Record at page 25) It seems difficult for this Court to perceive that by appellant's *third* trial [1] counsel would be totally ignorant of the existence of a warrant, *although such a conclusion can be drawn from a reading of Attorney Blakley's Motion to Suppress at Point 4, paragraphs (B) & (C).*

Thus, in light of the aforecited, it cannot be seriously argued that the record contains evidence to establish the absence of a warrant. Were we to hold trial counsel ineffective without *assuring* ourselves that a search warrant was not secured by the Warren police prior to the seizure of the incriminating evidence from the Cadillac Eldorado, such a procedure would assault the tenet that "counsel should be afforded the opportunity to explain his choice of strategy at an evidentiary hearing." *Commonwealth v. Lambeth*, 273 Pa.Super. 460, 462, 417 A.2d 739, 740 (1979). This requirement has not been satisfied by the hearing held on October 17–18, 1979, and, thus, the record is silent on the subject of ineffectiveness. In *Commonwealth v. Robinson*, 298 Pa.Super. 447, 444 A.2d 1260 (1982) a panel of this Court was confronted with an identical problem and handled it in the following manner:

> [We] will not automatically deem counsel ineffective for failing to present the suppression motion timely. Counsel will not be deemed ineffective when he fails to pursue a meritless claim. *Commonwealth v. Weathers El*, 485 Pa. 28, 400 A.2d 1295 (1979). In this case, however, because of the inadequacy of the record, it is not possible to conclude that the motion to suppress had arguable merit.

**1.** We note that the charges lodged against the appellant were all the outgrowth of a check cashing scheme that occurred, as is evident from the criminal complaints filed by Trooper Ronald Amon, on June 13th, May 5th and April 19th of 1977. Each of the fraudulent checks linked to the appellant resulted in separate trials of September 21, 1977, November 14–15, 1977 and January 23, 1978.

As far as we can decipher from the record, since the transcript of the September trial is not included herein, at the November trial the evidence seized from the Cadillac Eldorado was introduced to buttress the Commonwealth's case against the appellant. Thus, it was a factor in his conviction.

The affidavit supporting the search warrant is not in the record and the lower court did not address the issue. We therefore remand to the trial court with direction to order the party in possession to produce the search warrant and affidavit and to conduct an evidentiary hearing on the question of whether the suppression motion had arguable merit. If the lower court determines that counsel was ineffective, appellant should be allowed to file a suppression motion *nunc pro tunc.*

The judgment of sentence is reversed and case remanded.

*Id.* 298 Pa.Super. at 453–54, 444 A.2d at 1263–64.

In accordance with *Robinson,* this case will be remanded with directions to require the person in possession of the search warrant, *if one does exist,* to produce it and then have the trial court assess the probable cause section in accordance with accepted standards.

On the other hand, if a warrant was not secured by the authorities, failure to raise in a pre-trial motion such an arguably meritorious claim cannot be said to have been a course of action designed to effectuate a client's interest. *See Commonwealth v. Segers,* 479 Pa. 108, 387 A.2d 858 (1978); *cf. Commonwealth v. Byrd,* 250 Pa.Super. 250, 256, 378 A.2d 921, 924 (1977) ("We can perceive no reasonable legal basis for an attorney to fail to object to a violation of his client's right to speedy trial under Pa.R.Crim.P. 1100." (Citation omitted)). This is especially so given the interpretation of the officers' actions (motive) in searching the vehicle. (N.T. 11/14–15/77 at 83–94)

Consequently, if a remand establishes that the search was a warrantless one, it seems clear to us that counsel was ineffective. Appellant should be then afforded the opportunity to file a suppression motion *nunc pro tunc, see Commonwealth v. Robinson, supra,* and have the case proceed through the judicial process as any other matter, for it 'may be that the Commonwealth can secure a conviction in the absence of the seized evidence as occurred in appellant's January 23, 1978 trial.

Order reversed and case remanded.[2]   Jurisdiction is relinquished.

JOHNSON, J., concurs in the result.

HESTER, J., files a concurring and dissenting opinion.

HESTER, Judge, concurring and dissenting:

While I concur with the majority opinion that the lower court correctly resolved the four allegations of ineffective assistance of counsel alleged by appellant against his trial counsel for failing to file certain motions concerning: 1) a delay in the preliminary arraignment; 2) a delay in the preliminary hearing; 3) holding a preliminary hearing without assistance of counsel for appellant; and 4) double jeopardy.   I believe these issues merit discussion due to the complex factual nature of this case and errors contained in the lower court's reasoning regarding their resolution. Thus, I will first discuss the procedural history of this case to better elucidate the issues that are now before us.

2.  Pursuant to this Court's directive, *see Commonwealth v. Corbin*, 268 Pa.Super. 526, 408 A.2d 1128 (1979), a hearing was conducted to evaluate appellant's various allegations of ineffectiveness attendant to his trials, one of which occurred on September 21, 1977 and the other on November 14–15, 1977.   The hearing judge, after the proceedings were completed, held that "a new trial must be granted to the [appellant] for the September 21st trial."   (Lower Court Opinion at 3)   *We see no reason, based on the claims made and the facts presented in regard thereto, to disturb this ruling.*

As an aside, we note that the Commonwealth filed a "Petition For Nolle Prosequi" on May 15, 1981; therein it stated:

8.   That on January 22, 1981, by Order of your Honorable Court, the defendant was granted a new trial with regards [sic] to the first trial by jury which was held on September 21, 1977.

9.   After remand by your Honorable Court, it was discovered that through no fault of the Clearfield County District Attorney's Office, evidence necessary to commence trial in this particular case had been destroyed and lost, despite diligent efforts by the District Attorney's Office to locate same.   Therefore, we will be unable to proceed in this matter.

(Record at page 76)

The court entered an Order dated May 14, 1981 holding that a *nolle prosequi* be granted with regard to one count of forgery and receiving stolen property, of which the defendant was convicted on September 21, 1977.   All other matters in connection with the case (77–610–CRA) were to remain the same.

Appellant was arrested and charged with three counts of forgery,[1] four counts of receiving stolen property,[2] and eight counts of criminal conspiracy.[3] The District Attorney's Office of Clearfield County decided to prosecute appellant in three separate trials. Appellant was tried and convicted on September 21, 1977, on charges of forgery and receiving stolen property. The second trial occurred on November 14 and 15, 1977, when appellant was again convicted of forgery, receiving stolen property, and criminal conspiracy. Appellant was tried for the third time on similar charges on January 23, 1978, and was similarly convicted on all counts.

Appellant, through his counsel, filed an appeal with this Court alleging error with the first and the third trials. Appellant also filed a *pro se* brief claiming ineffective assistance of counsel in all three trials. In remanding the convictions stemming from the first two trials to the lower court, we ruled:

"Inasmuch as we are unable to determine from the record before us whether or not defendant was represented by ineffective counsel either pretrial, trial, or post trial in either of the first two trials (one on September 21, 1977 and the other on November 15, 1977), we are remanding the cases tried on those two dates. The court below is directed to hold an evidentiary hearing to determine the question of effectiveness of counsel. If it is determined that counsel for defendant was ineffective in one or both of said trials, then the defendant shall be granted a new trial in one or both series of charges. If on the other hand it is determined that counsel was not ineffective in either of said trials, the judgment of said sentences following those trials will be affirmed.

We affirm the convictions in the cases tried on January 23, 1978, however, this group of cases is remanded to the

1. 18 Pa.C.S.A. § 4101.

2. 18 Pa.C.S.A. § 3925.

3. 18 Pa.C.S.A. § 903.

court below for resentencing in the event that a new trial should be granted in either of the other series. After the court below has made its decisions, either party may appeal."

*Commonwealth v. Corbin*, 268 Pa.Super. 526, 535, 408 A.2d 1128, 1132 (1979). A hearing was held in accordance with our Order on October 17–18, 1979, and on December 5, 1979. Following the hearing and the submission of briefs by both parties, the lower court granted a new trial as to the first trial but affirmed the convictions secured by the second trial.

The present appeal is thus limited to appellant's claim of ineffective assistance of counsel at his second trial on November 14–15, 1977. First, I will address appellant's contention that neither his preliminary arraignment nor preliminary hearing was timely. In the case *sub judice*, appellant was arrested on June 22, 1977 on a parole violation. Appellant was not arrested on the charges for which he was tried on three separate occasions until July 12, 1977. On that same day, appellant was taken before District Magistrate Wesley J. Read in Dubois, Pennsylvania, for his preliminary arraignment. Thus, appellant's contention that his preliminary arraignment was untimely is meritless.[4]

4. Pa.R.Crim.P. 123(a)–(c) is as follows:
"(a) Where the offense charged is bailable before an issuing authority and the defendant has been arrested in a county other than where the warrant of arrest was issued, the arresting person shall take the defendant to an issuing authority in the county of arrest for the purpose of posting bail.
(b) Such issuing authority shall advise the defendant of his right to post or waive bail. Unless the right to post bail is waived, the defendant shall be admitted to bail conditioned upon his appearance for the preliminary arraignment before the issuing authority whose name appears on the warrant at a date certain not less than five (5) nor more than ten (10) days thereafter.
(c) A defendant may post bail to appear at a preliminary hearing, or if the attorney for the Commonwealth does not object, he may waive preliminary hearing and post bail to appear in court. Where an objection is made to such waiver, the defendant may post bail only for his appearance at the preliminary hearing."
In reaching this conclusion, I must disagree with the lower court which found that the preliminary arraignment was held twenty-one days after appellant was arrested. Appellant's arrest on June 12, 1977,

At the time of his preliminary arraignment, appellant was advised of his right to be represented by a public defender. Appellant rejected legal representation, and instead, elected to hire his own counsel. However, on July 19, 1977, the day of his preliminary hearing, appellant still had not retained counsel; a one-week continuance was granted until July 26, 1977. On that date, appellant's counsel, Robert Garshak, and the attorney for the Commonwealth agreed to continue the hearing until August 5, 1977, at 9:00 a.m. However, on that date, Mr. Garshak arrived more than an hour after the hearing was to begin and indicated to Magistrate Read that he was withdrawing from the case. Appellant then requested, contrary to his previous declarations, that an attorney be appointed to represent him.

The Commonwealth, fully prepared to proceed with the preliminary hearing, objected to any further delays. Magistrate Read granted the Commonwealth's motion to proceed and thereafter held appellant for trial on three counts of forgery, four counts of receiving stolen property, and eight counts of criminal conspiracy.

I conclude that appellant's allegation that his preliminary hearing was untimely is without merit in that the first scheduled hearing was well within the prescribed time limits and the continuances were granted for good cause.

Appellant next contends that his lack of representation at the August 5, 1977 preliminary hearing constituted reversible error, and that his court-appointed trial counsel was ineffective for not raising this issue. It is axiomatic that the preliminary hearing is a "critical stage" of a criminal proceeding at which appellant is entitled to the assistance of effective counsel. *Coleman v. Alabama*, 399 U.S. 1, 90

was for a parole violation in Allegheny County, and thus has no relevance as to this issue. Also, if the lower court concluded, as it did, that appellant's preliminary arraignment and hearing were untimely, this would not only be grounds for granting a new trial as to the September 21, 1977 case but also for the November 14–15, 1977 trial which is at issue in this appeal, since appellant's preliminary arraignment and hearing encompassed not only the charges for the first trial but also the November 14–15, 1977 trial.

S.Ct. 1999, 26 L.Ed.2d 387 (1970); *Commonwealth v. Carver*, 292 Pa.Super. 177, 436 A.2d 1209 (1981); *Commonwealth v. Rines*, 247 Pa.Super. 429, 372 A.2d 901 (1977); *Commonwealth v. Redshaw*, 226 Pa.Super. 534, 323 A.2d 92 (1974). However, lack of representation at a preliminary hearing must result in specific prejudice to a defendant in order to constitute a basis for relief. *Coleman v. Alabama, supra; Commonwealth v. Sawyer*, 238 Pa.Super. 213, 357 A.2d 587 (1976); *Commonwealth v. Redshaw, supra* 226 Pa.Super. at 536, 323 A.2d at 93. "If appellant suffers no prejudice, he is entitled to no remedy." *Commonwealth v. Rines, supra*, 247 Pa.Super. at 432, 372 A.2d at 903 (citations omitted); *Commonwealth v. Carver, supra* 292 Pa.Super. at 179–180, 436 A.2d at 1211.

Appellant has made no allegation of specific prejudice and the record reveals none, for appellant received a second preliminary hearing prior to his second trial. Furthermore, as noted by the district attorney at the evidentiary hearing, the Commonwealth had all of its witnesses present on both August 5, 1977, and July 26, 1977. Moreover, even though the hearing on July 26, 1977, was continued due to a conflict arising between the Commonwealth's and appellant's counsel, appellant's counsel stated that he would have not represented appellant at that hearing due to the fact that he had not received his fee. In addition, Mr. Garshak arrived an hour late for the August 5, 1977, hearing, and then withdrew his appearance as a result of not having been compensated. The Commonwealth's witnesses were so infuriated by the delays that one left, resulting in the Commonwealth being unable to proceed in one of its cases against appellant.

The absence of counsel at the August 5, 1977, hearing was the fault of appellant and his counsel, Mr. Garshak. At his preliminary arraignment on July 12, 1977, appellant was advised of his right to have court-appointed counsel and he failed to exercise that right. The original preliminary hear-

ing had to be continued due to a fee dispute between appellant and his counsel. Furthermore, this fee dispute had not been resolved by August 5, 1977. Either appellant or Mr. Garshak should have informed the magistrate prior to that date of their conflict so that counsel could have been appointed for appellant. Therefore, appellant's trial counsel was not ineffective for failing to pursue this meritless issue.

Appellant next raises the issue of whether he was subjected to double jeopardy. In *Commonwealth v. Miller*, 278 Pa.Super. 103, 106–107, 419 A.2d 1378, 1380 (1980), we stated the law to be applied in such instances:

"In the case of *Commonwealth v. Campana*, 452 Pa. 233, 304 A.2d 432, *vacated and remanded*, 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44 (1973), *on remand*, 455 Pa. 622, 314 A.2d 854, *cert. denied*, 417 U.S. 969, 94 S.Ct. 3172, 41 L.Ed.2d 1139 (1974), our Supreme Court held that double jeopardy considerations require a prosecutor to bring, in a single proceeding, all known charges against a defendant arising from a 'single criminal episode.' Shortly after that decision, the General Assembly put into effect section 110 of the Crimes Code which provides in pertinent part:

'Although a prosecution ... is based on different facts [than a former prosecution], it is barred by such former prosecution under the following circumstances:

(1) The former prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title ... and the subsequent prosecution is for:

(i) any offense of which the defendant could have been convicted on the first prosecution;

(ii) any offense based on the same conduct or arising from the same criminal episode, if such offense was known to the appropriate prosecuting officer at the time of the commencement of the first trial and was within the jurisdiction of a single court unless the court ordered a separate trial of the charge of such offense;

Applying section 110 to the instant situation, we conclude that appellant is not entitled to discharge. To win discharge under § 110(1)(ii), appellant would have to prove that his offenses were 'based on the same conduct or ar[ose] from the same criminal episode.' *See Commonwealth v. Shelhorse*, 252 Pa.Super. 475, 381 A.2d 1305 (1977). The record in the instant case reveals that indictments numbers 305 and 47 charged appellant with theft and conspiracy offenses occurring on the same premises and against the same victim. The criminal incidents represented by each indictment entailed, however, distinct entries into the same residence and were temporally separated by a period of at least six hours. Under these circumstances, we hold that the 'same criminal episode' test of *Campana* and section 110 has not been met, and therefore the instant prosecution is not prohibited."

In the present case, the offenses faced by appellant in his second trial not only occurred at a different time than the offenses charged in the first trial as in *Miller, supra,* but also involved different locations and parties. I therefore conclude that appellant was not subjected to double jeopardy in the lower court proceeding, and thus, his trial counsel was not ineffective for failing to raise this issue.[5]

Regarding appellant's final issue concerning appellant's allegation that his trial counsel was ineffective for not perserving for appellate review the issue involving the search of appellant's vehicle, I must respectfully dissent concerning this issue. The facts surrounding this search and seizure are as follows. On May 13, 1977, Sergeant Nearing of the Warren Borough Police Department observed a Cadillac automobile parked in a no parking zone

---

**5.** Appellant has also raised the issue of whether the lower court erred in not recusing itself from the evidentiary hearing in that the rulings alleged to be prejudicial involving appellant's first trial which was reversed by the lower court, I find appellant's contention to be groundless.

outside a tavern. Sergeant Nearing proceeded into the establishment and inquired as to the ownership of the vehicle. Appellant responded, "I am the owner", and/or "I am driving it." The officer then checked on the license plate number. Appellant produced a driver's license issued to John T. Krakowsky, one of his aliases. Sergeant Nearing was then informed by appellant that the car was owned by George Corbin.

Failing to secure a record for the vehicle, Officer Moore, Sergeant Nearing's partner at the scene, checked through the windshield to view the vehicle I.D. number. Finding it to be missing, the officers subsequently impounded the vehicle. The next day, they procured a national auto theft book and searched the vehicle for an identification number. During this search, the officers followed the instructions in the book and opened the glove compartment. Although they did not find the missing number, they did discover the corporate seal of the Spruce Hill Equipment Corporation in plain view. Continuing their search for the vehicle identification number, the officers inspected the trunk of the vehicle where they observed in plain view a check-writing machine and a box of checks belonging to the Spruce Hill Equipment Corporation. These objects were subsequently used as evidence at appellant's second trial.

The police officers quite properly impounded the car after learning that the license plate was not registered and that the dashboard vehicle identification number was absent. However, the record is devoid of any mention as to whether the officers who conducted the search of the entire vehicle, including the glove compartment and trunk, possessed a search warrant or whether appellant's counsel had knowledge of the existence of such a warrant.

In *South Dakota v. Opperman,* 428 U.S. 364, 369, 96 S.Ct. 3092, 3097, 49 L.Ed.2d 1000 (1976), the United States Supreme Court, in upholding the warrantless search of a motor vehicle, stated:

When vehicles are impounded, local police departments generally follow a routine practice of securing and inventorying the automobiles' contents. These procedures developed in response to three distinct needs: the protection of the owner's property while it remains in police custody, *United States v. Mitchell,* 458 F.2d 960, 961 (CA9 1972); the protection of the police against claims or disputes over lost or stolen property. *United States v. Kelehar,* 470 F.2d 176, 178 (CA5 1972); and the protection of the police from potential danger, *Cooper v. California, supra* [386 U.S. 58] at 61–62, 17 L.Ed.2d 730, 87 S.Ct. 788 [at 790–791]. The practice has been viewed as essential to respond to incidents of theft—or vandalism. See *Cabbler v. Commonwealth,* 212 Va. 520, 522, 184 S.E.2d 781, 782 (1971), cert. denied, 405 U.S. 1073, 31 L.Ed.2d 807, 92 S.Ct. 1501 (1972); *Warrix v. State,* 50 Wis.2d 368, 376, 184 N.W.2d 189, 194 (1971). *In addition, police frequently attempt to determine whether a vehicle has been stolen and thereafter abandoned.* (Emphasis added).

And at 428 U.S. 367–68, 96 S.Ct. 3096, 1004 of 49 L.Ed.2d:

This Court has traditionally drawn a distinction between automobiles and homes or offices in relation to the Fourth Amendment. Although automobiles are "effects" and thus within the reach of the Fourth Amendment, *Cady v. Dombrowski,* 413 U.S. 433, 439, 37 L.Ed.2d 706, 93 S.Ct. 2523 (1973), warrantless examinations of automobiles have been upheld in circumstances in which a search of a home or office would not. *Cardwell v. Lewis,* 417 U.S. 583, 589, 41 L.Ed.2d 325, 94 S.Ct. 2464 [2468], 69 Ohio Ops.2d 69 (1974); *Cady v. Dombrowski,* supra [413 U.S.] at 439–440, 37 L.Ed.2d 706, 93 S.Ct. 2523 [at 2527]; *Chambers v. Maroney,* 399 U.S. 42, 48, 26 L.Ed.2d 419, 90 S.Ct. 1975 [1979] (1970).

The reason for this well-settled distinction is two-fold. First, the inherent mobility of automobiles creates circumstances of such exigency that, as a practical necessity,

rigorous enforcement of the warrant requirement is impossible. *Carroll v. United States,* 267 U.S. 132, 153–154, 69 L.Ed. 543, 45 S.Ct. 280 [285], 39 ALR 790 (1925); *Coolidge v. New Hampshire,* 403 U.S. 443, 459–460, 29 L.Ed.2d 564, 91 S.Ct. 2022 [2034–2035] (1971). But the Court has also upheld warrantless searches where no immediate danger was presented that the car would be removed from the jurisdiction. *Chambers v. Maroney,* supra [399 U.S.] at 51–52, 26 L.Ed.2d 419, 90 S.Ct. 1975 [at 1981–1982]; *Cooper v. California,* 386 U.S. 58, 17 L.Ed.2d 730, 87 S.Ct. 788 (1967). Besides the element of mobility, less rigorous warrant requirements govern because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office. In discharging their varied responsibilities for ensuring the public safety, law enforcement officials are necessarily brought into frequent contact with automobiles. Most of this contact is distinctly noncriminal in nature. *Cady v. Dombrowski,* supra [413 U.S.] at 442, 37 L.Ed.2d 706, 93 S.Ct. 2523 [at 2528]. Automobiles, unlike homes, are subjected to pervasive and continuing governmental regulation and controls, including periodic inspection and licensing requirements. As an everyday occurrence, police stop and examine vehicles when license plates or inspection stickers have expired, or if other violations, such as exhaust fumes or excessive noise, are noted, or if headlights or other safety equipment are not in proper working order.

The expectation of privacy as to automobiles is further diminished by the obviously public nature of automobile travel. Only two Terms ago, the Court noted:

"One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects.... It travels public thoroughfares where both its occupants and its contents are in plain view." *Cardwell v. Lewis,* supra [417 U.S. 583] at 590,

41 L.Ed.2d 325, 94 S.Ct. 2464 [at 2469], 69 Ohio Ops.2d 69.

And at 428 U.S. 371, 96 S.Ct. 3098, 1006 of 49 L.Ed.2d:

The majority of the Federal Courts of Appeals have likewise sustained inventory procedures as reasonable police intrusions. As Judge Wisdom has observed:

"[W]hen the police take custody of any sort of container [such as] an automobile ... it is reasonable to search the container to itemize the property to be held by the police. [This reflects] the underlying principle that the fourth amendment proscribes only unreasonable searches." *United States v. Gravitt*, 484 F.2d 375, 378 (CA5 1973), cert. denied, 414 U.S. 1135, 38 L.Ed.2d 761, 94 S.Ct. 879 (1974).

And at 428 U.S. 372–73, 96 S.Ct. 3098–99, 1007 of 49 L.Ed.2d:

The decisions of this Court point unmistakably to the conclusion reached by both federal and state courts that inventories pursuant to standard police procedures are reasonable. In the first such case, Mr. Justice Black made plain the nature of the inquiry before us:

"But the question here is not whether the search was authorized by state law. The question is rather whether the search was reasonable under the Fourth Amendment." *Cooper v. California*, 386 U.S., at 61, 17 L.Ed.2d 730, 87 S.Ct. 788 [at 790] (emphasis added).

And, in his last writing on the Fourth Amendment, Mr. Justice Black said:

"[T]he Fourth Amendment does not require that every search be made pursuant to a warrant. It prohibits only 'unreasonable searches and seizures.' The relevant test is not the reasonableness of the opportunity to procure a warrant, but the reasonableness of the seizure under all the circumstances. The test of reasonableness cannot be fixed by per se rules; each case must be decided on its own facts." *Coolidge v. New Hampshire*, 403 U.S., at 509–510, 29 L.Ed.2d 564, 91 S.Ct. 2022 [at 2059–2060] (concurring and dissenting) (emphasis added).

In applying the reasonableness standard adopted by the Framers, this Court has consistently sustained police intrusions into automobiles impounded or otherwise in lawful police custody where the process is aimed at securing or protecting the car and its contents. In *Cooper v. California,* supra, the Court upheld the inventory of a car impounded under the authority of a state forfeiture statute. Even though the inventory was conducted in a distinctly criminal setting and carried out a week after the car had been impounded, the Court nonetheless found that the car search, including examination of the glove compartment where contraband was found, was reasonable under the circumstances. This conclusion was reached despite the fact that no warrant had issued and probable cause to search for the contraband in the vehicle had not been established. The Court said in language explicitly applicable here:

"It would be unreasonable to hold that the police, having to retain the car in their custody for such a length of time, had no right, even for their own protection, to search it." 386 U.S., at 61–62, 17 L.Ed.2d 730, 87 S.Ct. 788 [at 790–91].

In the present situation, the police were attempting to determine if the vehicle had been stolen since the dashboard vehicle I.D. number was missing. In continuing their attempt to locate the vehicle I.D. number, the police, following the instructions in the national auto theft book, opened the glove compartment and trunk and found the corporate seal, check-writing machine, and the box of checks which were admitted into evidence. Thus, the conduct of the police was not "unreasonable" under the Fourth Amendment, because the car was validly held. *South Dakota v. Opperman,* supra, and *Cooper v. California,* supra.

Therefore, I submit that counsel was not ineffective for failing to raise this issue and thus I would affirm the judgment of the lower court.